## A06A2448. NORBY et al. v. THE HERITAGE BANK.
(644 SE2d 185)

PHIPPS, Judge.

Susan Norby, as administratrix of the estate of Michael Norby and individually as his widow, brought this wrongful death action against The Heritage Bank after he was murdered as he was attempting to use a night deposit box on the bank's premises. The superior court granted the bank's motion for summary judgment. Finding a lack of similarity between prior crimes committed on the premises of the bank and the decedent's murder, the court ruled that the latter incident was not reasonably foreseeable by the bank. Norby appeals. Under the right for any reason rule, we affirm.

On the evening of November 21, 2002, Michael Norby went to The Heritage Bank in Midway to deposit a personal check in the night deposit box. The night deposit box and an automated teller machine (ATM) were located under a canopy at the rear of the bank facing a wooded area. Unbeknownst to Norby, four persons had concealed themselves in the area of the night deposit box awaiting the arrival of the manager of a store known as the Dollar Tree. When Norby appeared at the night deposit box, they mistook him for their intended victim and shot him instead. One of his assailants provided an affidavit in which he attributed their ability to conceal themselves, as well as their misidentification of the intended victim, to the poor lighting in the area of the night deposit box.

Commission of two prior crimes at the bank are shown by the record. The first was on February 13, 2002, when someone armed with a weapon entered the bank in the morning while the bank was open and took a substantial amount of money. After that armed robbery, surveillance cameras were placed in the drive-in area and in other locations in and around the bank. The second crime was on May 5, 2002, when someone attempted unsuccessfully to break into the ATM late at night when the bank was closed.

Susan Norby charged the bank with common law negligence in having inadequate lighting, in locating the night deposit box at the rear of the bank away from the adjacent public road, and in allowing foliage to grow in such a manner that the assailants could conceal themselves from customers who approached the area of the night deposit box. And, as in *Deese v. NationsBank of Ga.*,[1] Norby also charged the bank with negligence per se by having violated federal regulations requiring federally insured banks to adopt security systems, devices, and procedures to discourage crimes such as robberies and burglaries.

---

[1] 222 Ga. App. 275, 277 (474 SE2d 18) (1996).

In reviewing a grant of summary judgment pursuant to *Lau's Corp. v. Haskins,*[2] we conduct a de novo review of the law and the evidence,[3] giving the opposing party the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion.[4] If a defendant who does not bear the burden of proof at trial demonstrates that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case, the burden shifts to the nonmoving party to point out specific evidence giving rise to a triable issue.[5]

To state a cause of action for negligence under Georgia law, the following elements are essential: (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.[6]

Under OCGA § 51-3-1, "[a] proprietor's duty to invitees is to 'exercise ordinary care in keeping the premises and approaches safe.'"[7] A proprietor is not, however, the insurer of the invitee's safety.[8] Ordinarily, therefore, a proprietor is "insulated from liability by the intervention of an illegal act which is the proximate cause of the injury," unless the proprietor "had reasonable grounds for apprehending that such criminal act would be committed."[9] "If the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters."[10] Stated another way, "[i]n order for a plaintiff to prevail against a proprietor for injuries incurred as the result of a criminal

---

[2] 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Desai v. Silver Dollar City,* 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

[4] *Clark v. Cauthen,* 239 Ga. App. 226, 227 (1) (520 SE2d 477) (1999).

[5] *Lau's Corp.,* supra.

[6] *Brown v. All-Tech Investment Group,* 265 Ga. App. 889, 893 (1) (595 SE2d 517) (2004) (citation omitted).

[7] *Lau's Corp.,* supra at 492 (1).

[8] Id.

[9] *McClendon v. C & S Nat. Bank,* 155 Ga. App. 755, 756 (272 SE2d 592) (1980) (citations and punctuation omitted); see *Brown,* supra (independent, intervening criminal act of third party generally treated as proximate cause of injury superseding any negligence of defendant, unless intervening criminal act is reasonably foreseeable consequence of defendant's negligence).

[10] *Lau's Corp.,* supra (citation and punctuation omitted).

act committed by a third party on the proprietor's premises, a plaintiff must first show that the criminal act was reasonably foreseeable."[11] It has also been recognized that under OCGA § 51-3-1, "(t)he true ground of liability of the owner of property to an invitee who is injured thereon is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm."[12] Knowledge that the premises subjected its guests to an unreasonable risk of criminal attack may be demonstrated by evidence of the occurrence of "prior substantially similar incidents."[13]

In *McClendon v. C & S Nat. Bank*,[14] a bank customer who had been robbed in the bank's parking lot sued the bank for failure to exercise reasonable care for her safety. Affirming the trial court's grant of the bank's motion for directed verdict, we held that prior instances of possible criminal activity inside the bank, as shown by numerous alarms to police, did not give the bank reasonable grounds for apprehending a dangerous situation in the parking lot.

Similarly, in *McCoy v. Gay*,[15] we held that proof of a purse snatching and weaponless robbery through physical violence in areas of a motor inn removed from the parking lot did not provide the owners of the motor inn with knowledge of the risk that an armed robbery would be committed as a result of poor lighting and the absence of a security guard in the parking lot. Therefore, as in *McClendon*, we affirmed the trial court's grant of a directed verdict to the defense.

In *Lau's Corp.*,[16] however, where the plaintiffs were robbed in the parking lot adjoining a restaurant, our Supreme Court held that evidence that the proprietor of the restaurant knew about one previous purse snatching in the parking lot, and that his business was located in a "high crime" area, was minimally sufficient to give rise to triable issues whether the proprietor had a duty to exercise ordinary care to guard his patrons against the risk posed by criminal activity in the parking lot.

In *Savannah College of Art & Design v. Roe*,[17] the plaintiffs were students who were sexually attacked by an unknown intruder while

---

[11] *Whitmore v. First Fed. Sav. &c.*, 225 Ga. App. 768 (1) (484 SE2d 708) (1997) (citations omitted).

[12] *McCoy v. Gay*, 165 Ga. App. 590, 591 (302 SE2d 130) (1983) (citation and punctuation omitted).

[13] *Matt v. Days Inns of America*, 212 Ga. App. 792, 794 (443 SE2d 290) (1994) (citation omitted), aff'd, *Days Inns of America v. Matt*, 265 Ga. 235 (454 SE2d 507) (1995).

[14] Supra.

[15] Supra.

[16] Supra.

[17] 261 Ga. 764, 765-766 (2) (409 SE2d 848) (1991).

they were living in a dormitory. Our Supreme Court held that evidence that the college was located in an urban environment — and that it had received reports of two instances of "peeping Toms" at the dormitory, that a vagrant and an intoxicated person had been removed from the dormitory, that a student had surprised a burglar, and that petty thefts had occurred — was collectively insufficient to create a factual issue whether the college knew or should have known that its dormitory residents were at risk of violent criminal sexual attack. The Court concluded that the extrinsic evidence was irrelevant because none of the other incidents was substantially similar to the sexual assaults which were the bases of the litigation.

In *Matt v. Days Inns of America*,[18] however, where the plaintiff was shot in a robbery attempt in a parking lot at the Atlanta Airport Days Inn, we held that the record of numerous armed robberies and other serious crimes of violence against persons in the parking lots of nearby hotels — when coupled with the record of the prior robbery of a guest inside a room at the Airport Days Inn, and numerous other crimes such as a purse snatching and robbery by force in the parking lot — presented a genuine issue of material fact whether the crime in that case was reasonably foreseeable. We refused to hold that the prior offenses lacked substantial similarity to the attempted robbery and shooting of the plaintiff. We explained that

> [t]o reach that result would require the conclusion that a hotel somehow would safeguard its guests differently to protect them from robberies by force and violence than from armed robberies, or protect them differently from armed robbers with firearms than those with knives, or protect guests differently from assaults than from armed robberies.[19]

*Sun Trust Banks v. Killebrew*[20] was quite similar to this case, in that the plaintiff there was shot by a robber at the bank's parking lot after using an ATM at night. Five months earlier, another customer using the same ATM at night had been accosted in the parking lot by an assailant who threatened the customer with bodily harm. But because that crime had not been reported to the bank, our Supreme Court held that the bank was not chargeable with knowledge of it. In a concurring opinion, however, then Justice Sears suggested that the well-known dangers attendant to bank customers' use of ATMs — particularly where, as in *Killebrew*, the ATM was located on the side

---

[18] Supra, 212 Ga. App. 792.
[19] Id. at 795.
[20] 266 Ga. 109 (464 SE2d 207) (1995).

of the bank and was not well lit — created a factual issue regarding whether the bank could have anticipated criminal activity at the ATM.

On remand in *Killebrew*, this court, in reliance on then Justice Sears' concurrence, held that the grant of summary judgment to the bank based on lack of foreseeability was improper.[21] We recognized, however, that the analysis did not end there because

> [o]nce the plaintiff in a premises liability case clears the proximate cause hurdle, he still must show that the landowner had a duty to protect him, and the existence of a duty depends not just on foreseeability, but on superior knowledge. If a criminal act is not foreseeable, it logically follows that the landowner does not have superior knowledge of the danger of its occurrence. But even if the criminal act is foreseeable, it does not necessarily follow that the landowner has superior knowledge, since the danger may be equally apparent to the plaintiff.[22]

We further recognized in *Killebrew* that arguably, the general public and banking industry are equally aware of the danger of criminal activity at ATMs. But we found evidence in *Killebrew* from which a jury could conclude that the bank there did have superior knowledge that that particular ATM was even more dangerous than it appeared to members of the public. We, therefore, concluded that the trial court's grant of summary judgment to the bank based on its lack of duty was improper.

*Whitmore v. First Fed. Sav. &c.*[23] also bears a great deal of similarity to the case at bar. There, the plaintiff went to make a night deposit at a bank. A man armed with a gun entered his car, ordered him to drive to another location, shot him twice, and took his car and deposit money. We held that the plaintiff's evidence of prior crimes failed to establish that the criminal attack upon him was reasonably foreseeable by the bank, because the sole prior criminal act occurring on the bank's property was a property crime (a theft of a bag of money from an unlocked, unattended car) rather than a crime against a person.[24] Based, however, on the generally recognized danger associated with ATMs and night depositories, we concluded that there

---

[21] *Killebrew v. Sun Trust Banks*, 221 Ga. App. 679, 680 (1) (472 SE2d 504) (1996) (physical precedent only).

[22] Id. at 680 (2) (citations and emphasis omitted).

[23] Supra, 225 Ga. App. 768.

[24] Id. at 768-770 (1).

was an issue of material fact regarding foreseeability in the case.[25] Nevertheless, we held that summary judgment to the bank was appropriate, because

> the well publicized danger of criminal activity associated with the use of such devices is equally apparent to members of the general public absent specific knowledge on the bank's part leading to an awareness that a particular ATM or night depository is even more dangerous than it appears to members of the public based on their general knowledge.[26]

In *Whitmore*, we found no evidence that the bank had superior knowledge that the night depository in question was more dangerous than it appeared to the general public. We noted that this was "especially true in light of . . . Whitmore's admission that he had used the night depository on several occasions, and thus was aware of the general surroundings in the area."[27]

Shortly after our decision in *Whitmore*, our Supreme Court in *Sturbridge Partners v. Walker*[28] rejected the proposition that knowledge of prior criminal acts against property cannot establish the foreseeability of a crime of violence against a person as a matter of law. *Sturbridge* concluded that an apartment complex operator's knowledge of prior burglaries of unoccupied apartments gave rise to a triable issue whether it had a duty to exercise ordinary care to guard a tenant against the risk of sexual attack during the burglary of an occupied apartment. *Sturbridge* explained that a contrary holding would suggest that the landlord would safeguard its tenants from burglars who commit only theft offenses differently from those burglars who commit crimes against persons.

The Court held:

> In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. While the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical. What is required is that the prior incident be sufficient to attract the landlord's

[25] Id. at 770 (2).
[26] Id. at 770-771.
[27] Id. at 771.
[28] 267 Ga. 785 (482 SE2d 339) (1997).

attention to the dangerous condition which resulted in the litigated incident. Further, the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.[29]

To the extent that *Savannah College of Art & Design* supported a different analysis, it was overruled.

After deciding *Sturbridge*, the Supreme Court denied certiorari in *Whitmore.* Citing the *Sturbridge* analysis, the Court later held in *Doe v. Prudential-Bache/A.G. Spanos Realty Partners*[30] that prior property crimes, largely thefts from automobiles and acts of vandalism, were insufficient to create a factual issue regarding whether the owner and manager could reasonably anticipate that a violent sexual assault might occur on the premises. Accordingly, in *Baker v. Simon Property Group,*[31] we held that property crimes in a mall's parking lot were insufficient to create a factual issue as to whether the manager of the mall could reasonably anticipate a carjacking and shooting resulting in personal injury. And in *Agnes Scott College v. Clark,*[32] we held that crimes against property, such as car break-ins and other crimes not involving person-to-person contact, did not make the kidnapping and off-campus rape of a student reasonably foreseeable.

Applying the *Sturbridge* analysis, the trial court would appear to have erred in granting the bank's motion for summary judgment based on the lack of similarity between the prior criminal activity and the crime in the case at bar. If the burglary of unoccupied apartments put the landlord in *Sturbridge* on notice of the risk of an attack on a tenant unfortunate enough to be confronted by a burglar during a crime in progress, it would seem that the late-night attempt to break into the ATM was at least marginally sufficient to attract the bank's attention to the dangerous condition created by the dim lighting and secluded location of its ATM and thereby put the bank on notice of the possibility of a criminal attack upon, and therefore the murder of, a bank customer at such time and place. This is particularly true in view of the well-known danger of criminal activity at devices such as night bank deposit boxes. Moreover, as held in *Killebrew* and *Whitmore*, even absent prior similar crimes, knowledge of that danger is sufficient to create a factual issue as to whether a bank could have

---

[29] Id. at 786 (citations and punctuation omitted).

[30] 268 Ga. 604 (492 SE2d 865) (1997).

[31] 273 Ga. App. 406, 407-408 (1) (614 SE2d 793) (2005).

[32] 273 Ga. App. 619, 621-623 (1) (616 SE2d 468) (2005).

anticipated a personal criminal attack upon a person using or attempting to use such a device — especially where, as here, it is located in a poorly lit, remote area. *Doe, Baker,* and *Clark* are thus distinguishable.

But here, like *Whitmore,* even though the record is silent as to the frequency of any prior use of the night depository by the decedent, its location and setting must have been apparent to him before he used it. It therefore appears without dispute that, in all material respects, the decedent had equal knowledge of the danger. Because the equal knowledge rule thus bars Norby's recovery, the trial court did not err in granting the bank's motion for summary judgment.

*Judgment affirmed. Smith, P. J., and Ruffin, J., concur.*

DECIDED MARCH 20, 2007 — 

*C. James McCallar, Jr.,* for appellants.
*John T. Croley, Jr.,* for appellee.