### A10A1716. B-T TWO, INC. v. BENNETT.

(706 SE2d 87)

BLACKWELL, Judge.

Hunter Bennett sued B-T Two, Inc., which does business as Buffalo's Café, to recover damages for injuries that he sustained at the hands of a Buffalo's employee and another unidentified person, who together assaulted Bennett at a party. Bennett contends that Buffalo's is liable under the doctrine of respondeat superior for the tort of its employee, and Bennett also claims that Buffalo's is liable for its own negligence in sponsoring a party at which unlimited alcohol was served and inadequate security was provided. After the trial court denied Buffalo's motion for summary judgment, Buffalo's

---

[1] 288 Ga. 322 (704 SE2d 755) (2010).
[2] *Floyd v. American Intl. South Ins. Co.*, 298 Ga. App. 771 (681 SE2d 216) (2009).

sought immediate review in this Court, which we allowed. Because we conclude that Buffalo's is entitled to summary judgment on each of the claims that Bennett asserts against it, we reverse the judgment below.

Summary judgment is warranted when the pleadings and record evidence establish that the material facts are undisputed and these facts entitle the moving party to judgment as a matter of law. See OCGA § 9-11-56 (c); see also *Marcum v. Gardner*, 283 Ga. App. 453, 454 (641 SE2d 678) (2007); *Smith v. Atlantic Mut. Cos.*, 283 Ga. App. 349, 350 (641 SE2d 586) (2007). We review the denial of a motion for summary judgment de novo. And on appeal, we assess the record evidence in the same way as the trial court, viewing it in the light most favorable to the nonmoving party. See *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).

So viewed, the evidence shows that, on the evening of September 30, 2006, several individuals hosted a party at a private residence in Laurens County. The hosts intended to raise money at the party for a Buffalo's manager, who was moving away to attend to the medical needs of his sick child. Several Buffalo's employees attended the party, and some of these employees wore Buffalo's uniforms. Flyers advertising the party were posted at a Buffalo's restaurant in Laurens County, which read:

PARTY!!!!
HELP BUFFALO'S SAY
FAREWELL TO THE BEST
DAMN MANAGER EVER, ASK
ANYONE FOR DIRECTIONS.
$5.00 COVER ONLY
ALL NIGHT!!!!

There is no evidence that Buffalo's owned or leased the residence at which the party was held, paid for any expenses of the party, provided food or alcohol for the party, received any revenues collected at the party, or placed any Buffalo's signs or other promotional materials at the location of the party.

Bennett learned of the party from his cousin, and they attended the party together. When they arrived, they saw a young woman wearing a Buffalo's shirt and selling wristbands, the purchase of which entitled the buyer to unlimited beer. Instead of buying a wristband, however, Bennett obtained one from another partygoer, who was leaving the party at the time Bennett and his cousin arrived.

After he arrived at the party, Bennett began playing billiards, but he later walked to a bar inside the residence and asked the

YALE LAW LIBRARY

bartender for a beer. The bartender — the wife of Justin King, a Buffalo's employee — refused to serve Bennett, falsely claiming that there was no more beer. Bennett demanded a beer or a refund of the cost of a wristband, and after another person intervened, the bartender relented and gave Bennett a beer.

Bennett then returned to his billiards game but found a man, with whom he was unacquainted, sitting on the edge of the billiards table. When Bennett asked the man to move, the man became angry and started toward Bennett. To avert a confrontation, Bennett explained that he did not mean to offend and only wanted to play billiards, and the man walked away. As Bennett resumed his billiards play, Bennett's cousin walked to the bar to get a beer. When his cousin returned, he warned Bennett that the bartender had said that, if Bennett were looking for a fight, he would get one. Not believing that he was in danger, Bennett continued to play billiards.

About 30 minutes later, the unknown man whom Bennett previously had found sitting on the billiards table returned and apologized for the earlier confrontation. Bennett did not notice that, as the unknown man approached and spoke with him, Justin King also was approaching him from the other side. Without warning, King struck Bennett in the head with such force that Bennett fell to the floor. While Bennett was down, King and the unknown man began hitting and kicking him. Bennett's cousin and other party-goers intervened to stop the assault, and Bennett was taken to the hospital, having sustained serious injuries.

In September 2008, Bennett filed this lawsuit, asserting claims against Buffalo's under two distinct legal theories.[1] First, Bennett contends that Buffalo's is liable for the tort of King, its employee, under the doctrine of respondeat superior. Second, Bennett claims that Buffalo's is liable for its own negligence, which consists of, according to Bennett, sponsoring a party at which unlimited alcohol was served to partygoers and inadequate security was provided. Based on these claims, Bennett seeks compensatory and punitive damages.

After discovery, Buffalo's moved for summary judgment on each claim that Bennett asserts against it. In support of its motion, Buffalo's offered an affidavit, in which a representative of the company stated that Buffalo's did not own or lease the residence at which the party was held and did not supply any food or alcohol for the party. After a hearing, the trial court denied the motion, finding that genuine issues of material fact precluded summary judgment.

---

[1] Bennett also named King as a defendant in this lawsuit, but King is not a party to this appeal, and we decide nothing about the claims against him.

Buffalo's then asked for immediate review in this Court, which we allowed, and this appeal followed.[2]

1. Buffalo's contends that it is not liable to Bennett under the doctrine of respondeat superior because the assault upon Bennett by a Buffalo's employee was neither within the scope of his employment nor in furtherance of Buffalo's business. We agree and reverse the denial of summary judgment on the respondeat superior claim.

Under the doctrine of respondeat superior, a master is liable for the tort of its servant only to the extent that the servant committed the tort in connection with his employment by the master, within the scope of his employment, and in furtherance of his master's business. See *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 613-614 (580 SE2d 215) (2003); see also *Dowdell v. Krystal Co.*, 291 Ga. App. 469, 470 (1) (662 SE2d 150) (2008). As we have said before, "the general rule for determining whether the master is liable for the acts of an employee is 'not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment.' " *Brownlee v. Winn-Dixie Atlanta*, 240 Ga. App. 368, 369 (1) (523 SE2d 596) (1999). Although a jury often must resolve whether a servant, at the time he committed a tort, was acting within the scope of his employment and in furtherance of his master's business, the evidence in some cases is so plain and undisputable that the court properly may decide a respondeat superior claim as a matter of law. See *Leo v. Waffle House*, 298 Ga. App. 838, 842 (3) (681 SE2d 258) (2009); see also *Drury v. Harris Ventures*, 302 Ga. App. 545, 546 (1) (691 SE2d 356) (2010) ("Summary judgment for the master is appropriate where the evidence shows that the servant was not engaged in furtherance of his master's business but was on a private enterprise of his own.").

Even assuming that Buffalo's sponsored the party and that King attended the party in connection with his employment by Buffalo's, there is no evidence in the record that the assault upon Bennett was within the scope of his employment or in furtherance of Buffalo's business. There is nothing in the record, for instance, from which a jury properly might infer that assaulting a partygoer without provocation was even arguably among the responsibilities that King owed

---

[2] There is much discussion in the briefs about whether there is evidence in the record sufficient to establish that Buffalo's actually sponsored the party. The special concurrence concludes that the record does not contain such evidence and that summary judgment therefore should have been granted to Buffalo's on each of Bennett's claims. But because we believe that this appeal is better resolved by separately considering the merits of each of Bennett's claims, and because this appeal can be decided without resolving the "sponsorship" of the party, we assume for the sake of argument that Buffalo's did sponsor the party.

his employer or that the assault upon Bennett had, or was intended to have, any business purpose whatsoever. Whatever King's reasons for assaulting Bennett, there is no evidence from which a jury might conclude that the assault had anything to do with Buffalo's business. In cases presenting similar facts and involving similar claims, we have held that claims under the doctrine of respondeat superior failed as a matter of law, even when the assault occurred at a place and time more directly related to the work for which the master employed the servant. See, e.g., *Drury*, supra, 302 Ga. App. at 547 (1) (sexual assault upon customer by yard-maintenance laborer); *Dowdell*, supra, 291 Ga. App. at 470-471 (1) (assault upon customer by fast-food restaurant cashier after customer insulted cashier); *Worstell Parking v. Aisida*, 212 Ga. App. 605, 606 (1) (442 SE2d 469) (1994) (assault upon customer by parking lot attendant after customer failed to tip attendant). Consistent with these precedents, we conclude that Buffalo's is entitled to summary judgment on the respondeat superior claim in this case.

2. Buffalo's also contends that it is entitled to summary judgment on the negligence claim. Bennett has advanced two distinct theories of negligence, and we turn first to his contention that Buffalo's was negligent because it sponsored a party at which unlimited alcohol was served and that the service of alcohol to partygoers was a proximate cause of his injuries. As Buffalo's correctly observes, this theory of negligence is squarely foreclosed by OCGA § 51-1-40, which provides that, except in limited circumstances not presented in this case,[3] "the consumption of alcoholic beverages, rather than the sale or furnishing or serving of such beverages, is the proximate cause of any injury . . . inflicted by an intoxicated person upon himself or upon another person." OCGA § 51-1-40 (a). As we have explained, "this statute insulates providers of alcohol from third-party claims of negligence" except in the limited circumstances not presented here. *Solley v. Mullins Trucking Co.*, 301 Ga. App. 565, 567 (687 SE2d 924) (2009) (punctuation omitted); see also *Kappa Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890, 893 (2) (473 SE2d 213) (1996). To the extent that Bennett's assailants were intoxicated at the time of the assault and that their intoxication contributed to the assault, it was their consumption of alcohol, not the service of alcohol to them, that may have been the proximate cause of Bennett's injuries. For this reason, a

---

[3] The statute makes an exception in some cases involving the service of alcoholic beverages to persons who thereafter operate motor vehicles while intoxicated. See OCGA § 51-1-40 (b); see also *Hansen v. Etheridge*, 232 Ga. App. 408, 409 (501 SE2d 517) (1998). Bennett was not injured as the result of anyone's operation of a motor vehicle, and this exception, therefore, is not pertinent to this case.

654

negligence claim against Buffalo's premised on the service of alcohol at the party fails as a matter of law.

3. We turn now to Bennett's second theory of negligence, that Buffalo's was negligent for sponsoring a party without furnishing adequate security. Buffalo's contends that this theory of negligence fails because Bennett has come forward with no evidence showing that Buffalo's had any knowledge, much less superior knowledge, of the danger that Bennett might be assaulted at the party. See OCGA § 9-11-56 (e) ("When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations . . . of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial."). We agree that such evidence is absent from the record and is fatal to Bennett's second theory of negligence. For this reason, as well as the reasons set forth in Division 2, supra, we reverse the denial of summary judgment for Buffalo's on the negligence claim.

To prove a claim of negligence, of course, a plaintiff must prove that "the defendant did something that it should not have done or failed to do something that it should have done pursuant to the duty owed the plaintiff." *Parker v. Hovers*, 255 Ga. App. 184, 186 (1) (564 SE2d 795) (2002). Pursuant to OCGA § 51-3-1, an owner or occupier of land owes a duty of ordinary care to keep the premises safe for persons whom he invites or induces to come upon the land.[4] But as our Supreme Court and this Court have cautioned time and again, this standard of ordinary care does not mean that an owner or occupier of land is an insurer of the safety of his invitee. See, e.g., *Days Inns of America v. Matt*, 265 Ga. 235, 235 (454 SE2d 507) (1995); *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1) (405 SE2d 474) (1991); *Ferguson v. Premier Homes*, 303 Ga. App. 614, 616 (695 SE2d 56) (2010); *Glynn-Brunswick Mem. Hosp. Auth. v. Benton*, 303 Ga. App. 305, 307 (693 SE2d 566) (2010); *Vega v. La Movida, Inc.*, 294 Ga. App. 311, 312 (1) (a) (670 SE2d 116) (2008).

In prior cases, this Court and our Supreme Court have been required to decide whether this duty of ordinary care required an owner or occupier of land to keep an invitee safe from the criminal act of a third party,[5] and we have recognized two principles that guide

---

[4] In light of our assumption that Buffalo's sponsored the party, we also assume for the sake of argument that Buffalo's is an "occupier" — as that term is used in OCGA § 51-3-1 — of the location at which the party occurred. For the same reason, we assume that Bennett was an invitee to the party, rather than a social guest or trespasser.

[5] Because King acted outside the scope of his employment with Buffalo's when he assaulted Bennett, see Division 2, supra, we consider King as a third party for purposes of assessing whether Buffalo's owed a duty to protect Bennett against the assault. See *Dowdell*, supra, 291 Ga. App. at 472 (2) ("Because Shumate acted outside the scope of his employment

our consideration of the question and limit the circumstances in which the law imposes liability for the failure to protect against such a criminal act. See, e.g., *Norby v. Heritage Bank*, 284 Ga. App. 360 (644 SE2d 185) (2007), and the cases cited therein; *Cook v. Micro Craft*, 262 Ga. App. 434, 438 (1) (585 SE2d 628) (2003); *Sailors v. Esmail Intl.*, 217 Ga. App. 811, 812 (1) (459 SE2d 465) (1995). The first of these principles is that an owner or occupier must protect an invitee against the criminal act of a third party only to the extent that the criminal act is reasonably foreseeable. See *Vega*, supra, 294 Ga. App. at 312 (1) (a). The second principle is that, even when a criminal act is reasonably foreseeable, an owner or occupier is not liable for injuries resulting from the criminal act of a third party unless he had superior knowledge of the danger. *Whitmore v. First Fed. Sav. Bank*, 225 Ga. App. 768, 770 (2) (484 SE2d 708) (1997).

Applying these principles to this case, to support his second theory of negligence, Bennett must come forward with evidence from which a jury could conclude that Buffalo's had knowledge of circumstances that would lead a reasonable person to anticipate a criminal assault at the party and that Buffalo's had more knowledge of the possibility of such an assault than Bennett had. Even viewing the record evidence in the light most favorable to Bennett, as we must, it is apparent that Bennett has not carried this burden. See *Lau's Corp.*, supra, 261 Ga. at 491.

A variety of circumstances might lead a reasonable person to anticipate a criminal act at a particular location or event. For instance, a history of similar criminal acts at or near the same location or event might be enough. See, e.g., *Wade v. Findlay Mgmt.*, 253 Ga. App. 688, 690 (560 SE2d 283) (2002). Knowledge that a specific third party will be present at the location or event, accompanied by knowledge that the same third party has a history of violence, might also be enough. See, e.g., *Mason v. Chateau Communities*, 280 Ga. App. 106, 113 (633 SE2d 426) (2006). But there is no such evidence in the record here. There is, for instance, no evidence that Buffalo's had any knowledge that would have indicated King or any other partygoer had a propensity for violence, and there is no evidence that Buffalo's had knowledge that violence had broken out at any similar party or gathering in the area. Because Bennett has the burden of coming forward with some evidence showing that Buffalo's knew of some circumstances that would have led a reasonable person to anticipate the assault, the absence of such evidence in the record is fatal to his claim.

---

when he started the fight with Dowdell, he is considered a third party for the purposes of premises liability analysis."). We likewise consider the unknown, additional assailant as a third party because nothing in the record suggests that he was affiliated in any way with Buffalo's.

Even if we were to assume it to be "common knowledge" that, when alcohol is served, some people may become intoxicated and that, when people become intoxicated, some of them may become violent, it would not save Bennett's claim. In this case, even if Buffalo's knew that alcohol would be served at the party and could have anticipated that someone at the party could commit a criminal act of violence, we would attribute such common knowledge not just to Buffalo's, but to Bennett as well. And because Buffalo's would owe a duty *only* if its knowledge of the danger were superior to Bennett's, attributing such common knowledge to both Buffalo's and Bennett would not change the result in this case.[6] See *Norby*, supra, 284 Ga. App. at 366-367; *Whitmore*, supra, 225 Ga. App. at 770-771 (2); *Walker v. Sears Roebuck & Co.*, 278 Ga. App. 677, 680 (2) (629 SE2d 561) (2006).

Even if we thought the record could support Bennett's assertion that Buffalo's could have reasonably foreseen the criminal assault against Bennett, he has failed to come forward with any evidence from which a jury could conclude that Buffalo's had superior knowledge of the risk of criminal wrongdoing. Because such a showing is an essential element of Bennett's claim that Buffalo's was negligent in failing to furnish security for the party, and because Bennett's other theory of negligence is fatally flawed for the reasons discussed in Division 2, supra, we reverse the denial of summary judgment for Buffalo's on the negligence claim.

4. Bennett sought punitive, as well as compensatory, damages from Buffalo's. "In accordance with OCGA § 51-12-5.1, punitive damages can only be awarded as additional damages." *Nelson v. Glynn-Brunswick Hosp. Auth.*, 257 Ga. App. 571, 580 (5) (571 SE2d 557) (2002). Here, because Bennett has failed to demonstrate that he has any viable claim against Buffalo's, the trial court also should have awarded summary judgment to Buffalo's on the demand for punitive damages. See *Dowdell*, supra, 291 Ga. App. at 473 (4).

*Judgment reversed. Dillard, J., concurs. Barnes, P. J., concurs specially.*

BARNES, Presiding Judge, concurring specially.

While I agree with the results in this case, I do not agree with all that is said, and thus concur specially.[7]

---

[6] Attributing equal, or superior, knowledge to Bennett is even more appropriate in this case, given that he was aware of his earlier confrontation with his unknown assailant and that the bartender had made threatening statements about him. There is no evidence that Buffalo's knew about such things.

[7] Because I do not agree with all that is said, this opinion is physical precedent only. Court of Appeals Rule 33 (a).

Bennett contends that Buffalo's is responsible for his injuries under theories of respondeat superior and negligence. The record contains only circumstantial evidence that Buffalo's sponsored or participated in giving the party. The flyer said the party was to "help Buffalo's say farewell" to one of its managers, and some of the party attendees wore restaurant work shirts. One witness testified that he had seen flyers for the party at the restaurant a week beforehand, but did not recall whether they were posted on a wall, being handed out, or stacked on a table. He did not recall the specifics of the flyer and attended the party because a girl he knew invited him. All of the other witnesses, including Bennett and his mother, who investigated the issue after the fight, had only second- or third-hand knowledge of Buffalo's possible involvement. In fact, in his response to Buffalo's motion for summary judgment, Bennett cited to his complaint as support for the proposition that his attacker was a Buffalo's manager, and cited to the indictment against the attacker for the proposition that the company sponsored the party.

In contrast, a stockholder of the company that owns Buffalo's submitted an affidavit stating that Buffalo's did not sponsor the party and did not buy food or beverages for the party. He also averred that no one used Buffalo's beer or liquor licenses to buy alcohol for the party, and that none of the Buffalo's employees who attended the party was working for the restaurant at the time.

> [A] finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence. Summary judgment is improper only when circumstantial evidence is inconsistent with the direct evidence; in such a case a jury question is created.

(Citations omitted.) *Copeland v. Houston County Hosp. Auth.*, 215 Ga. App. 207, 208 (450 SE2d 235) (1994).

The circumstantial evidence of the flyer itself and its presence at the restaurant is not inconsistent with the direct evidence that Buffalo's did not sponsor the party. Accordingly, Buffalo's was entitled to summary judgment on all of Bennett's claims. Discussion of whether the assault was committed by an employee acting within the scope of his employment, whether sponsoring a party where unlimited alcohol was served without adequate security might lead to liability, whether the criminal assault on Bennett was foreseeable, and whether Bennett had "superior knowledge" of the impending assault is not necessary to resolve this appeal.

For these reasons, I concur specially in the majority opinion.

DECIDED JANUARY 27, 2011.

*Craig N. Cowart*, for appellant.
*Lanford, Smith & Kapiloff, David L. Smith*, for appellee.