**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 15, 2021**

# In the Court of Appeals of Georgia

A21A0072. SHADOW v. FEDERAL EXPRESS CORPORATION et al.

MARKLE, Judge.

This case arises from a tragic mass shooting at a FedEx Ground (Ground) packaging facility in Kennesaw that left numerous people seriously injured and the perpetrator dead. Ground employee Melissa Shadow, who was injured during the rampage, sued Federal Express Corporation (Express), and FedEx Corporate Services, Inc. (Services) for negligence. The trial court granted summary judgment to Express and Services on the ground that the risk of an active shooter was not foreseeable. Shadow now appeals from that order. After a thorough review of the record, we conclude that the trial court properly found that the attack was not foreseeable. Accordingly, we affirm the grant of summary judgment.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation omitted.) *Little-Thomas v. Select Specialty Hosp.-Augusta, Inc.*, 333 Ga. App. 362, 363 (773 SE2d 480) (2015).

1. *Kramer's rampage.*

In April 2014, Shadow and Geddy Kramer were employed at a Ground packaging facility in Kennesaw. Around 6:00 a.m. one morning, Kramer drove into the parking lot and entered the guard house through the exit door, which had been propped open.[1] He shot a security guard employed by AlliedBarton Security Services before exiting the guard house and accessing the main building through the bay

---

[1] There were security cameras in the guard house, and Kramer's entry was captured on video. The video was not included in the record on appeal. After this incident, Ground began a renovation of the guard house that had been planned before the attack.

doors. Once inside, he shot several other people, including Shadow, and then committed suicide.

2. *Federal Express defendants.*

FedEx Corporation (Corporation) is the parent company of the FedEx entities, which include Ground, Services, and Express. Express provides security services and training opportunities to Ground employees, and has two security specialists assigned to the Kennesaw facility to investigate internal losses and incidents of workplace violence, provide training, and oversee the hired security guards. Services provides sales, payroll, and IT to the various Federal Express operating companies.

The Kennesaw packaging facility housed package handlers, who worked the local delivery routes, and also operated as a "hub" for line haul drivers and tractor trailers. The facility was open 24 hours a day, except for Sunday, and package handlers were typically on site in the overnight and early morning hours. At any given time, there were about 150 to 200 people in the facility. The buildings were surrounded by a fence, and anyone entering was required to pass through the guardhouse staffed by unarmed AlliedBarton guards and swipe a badge to gain access to the main facility.

In 2011, there was a domestic violence incident at a Ground facility in Bedford Park, Illinois, in which the perpetrator committed suicide. Following this incident, Corporate updated its workplace safety program to address workplace violence. Generally, employees were trained to report any concerns to management for investigation by the Express security specialists.

In addition to the Bedford Park incident, Corporation and Express had copies of prior reports of threats at the Kennesaw facility in the five years leading up to the Kennesaw facility shooting, including a January 2011 matter in which a contractor's terminated employee commented that he was on the premises to "see who I'm going to shoot first;" a February 2011 incident in which a package handler threatened to stab and kill another employee; and an altercation in which an employee stated she would slap another employee before committing an assault in the parking lot. Corporation was also aware that package handlers had threatened AlliedBarton guards. Given the increase in mass shootings throughout the country, Corporation and the Express security managers generally believed an active shooter incident could happen anywhere, but did not expect it to happen at the Kennesaw facility.

3. *Procedural history.*

After the shooting, Shadow filed the instant complaint against Corporation, Express, Services, AlliedBarton, and the estate of Geddy Kramer, alleging negligence arising from the failure to keep the premises safe, failure to warn, failure to provide adequate security, and failure to keep the premises in proper repair.[2] To show that the attack was foreseeable, as was required to hold the premises owner liable for Kramer's criminal act, Shadow pointed to the Bedford Park shooting and the other reports of workplace violence at the Kennesaw facility. See *Rautenberg v. Pope*, 351 Ga. App. 503, 505 (1) (831 SE2d 209) (2019). She also submitted the testimony and report of a security expert, who opined that Express and Services had sufficient information from prior instances of workplace violence to make the attack foreseeable. The expert further noted that Express's security specialists knew of the problems controlling access to the facility – specifically, the exit door being propped open and the presence of a handle on the exterior of the exit door that enabled people to re-enter – which he opined further made the shooting foreseeable.

---

[2] The trial court dismissed the claims against Corporation as barred by the exclusivity provision of the worker's compensation statute, OCGA § 34-9-11 (a), and granted summary judgment to AlliedBarton. This appeal involves only those claims against Express and Services.

The trial court granted summary judgment to Express and Services, finding that Shadow had not established a factual question about whether the shooting was foreseeable. The trial court determined that the prior incidents were not sufficiently similar, and, although there had been some prior threats made toward the guards, the threats were only verbal and never involved Kramer. As to the expert's testimony, the trial court explained that it was insufficient to create a factual question because a generalized risk of harm was not enough.

Shadow now appeals, arguing that the trial court erred in finding that the shooting was not foreseeable on three related grounds: (1) it applied the wrong standard and incorrectly determined that the prior crimes were not substantially similar; (2) the cases the trial court relied on were distinguishable; and (3) the trial court ignored the expert testimony opining that the attack was foreseeable. We are not persuaded.

4. *Discussion.*

Under Georgia law, to state a claim for negligence,

the following elements are essential: (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting

6

injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

(Citation omitted.) *Brown v. All-Tech Investment Group, Inc.*, 265 Ga. App. 889, 893 (1) (595 SE2d 517) (2003).

In Georgia, a proprietor owes its invitees a duty "to exercise ordinary care in keeping the premises and approaches safe." OCGA 51-3-1. But, "the landowner is not an insurer of an invitee's safety. An intervening criminal act by a third party generally insulates a landowner from liability unless such criminal act was reasonably foreseeable." (Citation omitted.) *Rautenberg*, 351 Ga. App. at 505 (1).

We now turn to Shadow's specific enumerations of error, concluding that, although issues of negligence and reasonable foreseeability are generally not appropriate for summary judgment, "when, as here, the evidence is plain, palpable, and undisputable the trial court can and should conclude that a party is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *River Place at Port Royal Condo. Assn., Inc. v. Sapp*, No. A20A1923, __ Ga. App. __ ( __ SE2d __), 2021 WL 790780, at *2 (2021).

a. *The trial court applied the correct standard to determine the shooting was not foreseeable.*

7

As our Supreme Court has explained,

> if the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters. Accordingly, the incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity. In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. While the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical. What is required is that the prior incident be sufficient to attract the [proprietor's] attention to the dangerous condition which resulted in the litigated incident. Further, the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.

(Citations and punctuation omitted.) *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997); see also *Doe v. Prudential-Bache/A. G. Spanos Realty Partners, LP*, 268 Ga. 604, 605 (492 SE2d 865) (1997) (discussing standard for substantially similar criminal acts); *Rautenberg*, 351 Ga. App. at 505 (1).

8

We have described the inquiry into the *nature* of the prior offense to consider whether the prior incident was a physical attack or a property crime. See *Wade v. Findlay Mgmt., Inc.*, 253 Ga. App. 688, 690 (560 SE2d 283) (2002). But we have also explained the fundamental requirement that the "prior incident be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident." (Citation omitted.) Id. at 689. Here, the dangerous condition, as alleged in the complaint, was the failure to warn, to provide adequate security, and to keep the premises safe from a dangerous employee breaching security armed with weapons.

To be foreseeable, there must be more than a generalized risk of harm, and the evidence must show that the "criminal acts could reasonably have been anticipated, apprehended, or foreseen by [the proprietor]." (Citation omitted.) *St. Jude's Recovery Center, Inc. v. Vaughn*, 354 Ga. App. 593, 596 (2) (841 SE2d 108) (2020) (proprietor could not have foreseen rape of resident even though it was aware that other residents had been harassed and were vulnerable to attack). "Foreseeable consequences are those which, *because they happen so frequently*, may be expected to happen again." (Citation and punctuation omitted; emphasis in original). *Med. Center Hosp. Auth. v. Cavender*, 331 Ga. App. 469, 475 (1) (a) (771 SE2d 153) (2015). Stated another way, "a wrongdoer is not responsible for a consequence which is merely possible,

9

according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience." (Citation and punctuation omitted). *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 842 (1) (797 SE2d 87) (2017).

Applying these standards here, we conclude that Shadow has not shown that there is a factual question as to whether the mass shooting was reasonably foreseeable. Neither the prior shooting at another Ground facility nor the workplace violence reports lead to the conclusion that Kramer's rampage was foreseeable because none of those instances were sufficiently similar. First, the shooting at the Bedford Park facility involved a targeted domestic violence attack, the shooter was not a Ground employee, and he did not injure anyone except himself despite having the opportunity to do so.[3] See *B-T Two, Inc. v. Bennett*, 307 Ga. App. 649, 655 (3)

---

[3] Although Shadow argues that the Bedford Park shooting put Services and Express on notice, she acknowledges that a targeted attack like the one that occurred in Bedford Park is distinguishable from Kramer's acts. Because we conclude that there are other distinctions between the Bedford Park shooting and Kramer's rampage, we need not decide whether the physical distance between the facilities makes Bedford Park an improper comparison. See *Cavender*, 331 Ga. App. at 474 (1) (explaining that one way to show foreseeability is prior substantially similar crimes "on or near the premises"). Additionally, we find Shadow's reliance on *Cochran v. Lowe's Home Center, Inc.*, 226 Ga. App. 417 (487 SE2d 50) (1997), misplaced, as that case involved a hazardous condition on the property and not an intervening criminal act.

10

(706 SE2d 87) (2011) (physical precedent only) (attack was not foreseeable where there was no evidence of similar crimes and no evidence that attacker would be at the premises and had a history of violence); *Brown*, 265 Ga. App. at 896 (1) nn. 6-7 (compiling cases and concluding that day trader's murderous rampage was not foreseeable).

Second, the majority of the workplace violence reports involved only verbal threats; no one was injured; there was no weapon involved; and some of those instances occurred off-site. Because of the significant differences in the location, nature and extent of those situations, none of them would have reasonably alerted the defendants to the foreseeability of a random mass shooting. See *Cavender*, 331 Ga. App. at 475 (1) (a); *Brown*, 265 Ga. App. at 895-896 (1); *Vega v. La Movida, Inc.*, 294 Ga. App. 311, 314 (1) (a) (670 SE2d 116) (2008) (trial court properly excluded evidence of crimes that occurred outside bar because they were not substantially similar in location to show forseeability that crime would occur inside bar).

There are, however, three instances that require more consideration: in January 2011, a former employee entered the premises and made a statement about seeing who to shoot first; the following month, a package handler threatened to stab and kill someone; and a few weeks later, an employee threatened a manager and then grabbed

11

the manager and pulled her hair in the parking lot. All of these instances were investigated and the employees were terminated.

We do not find these instances substantially similar to Kramer's mass shooting. First, as to the comment about shooting someone, the record does not contain all of the report related to this threat. Based on the information that is included in the record, the person who made the comment was not a Ground employee, and after the incident, his badge was deactivated and he was banned from the property. No physical contact occurred, and the incident never escalated beyond this isolated statement. As to the report that one employee threatened to stab another employee, the investigation revealed that it arose from a break room dispute; no actual physical contact occurred; and the employee was terminated after an investigation.[4] Finally, as to the threat to slap a manager followed by an altercation in the parking lot, this involved one employee pulling the hair of another employee. None of these instances involved a breach of security, nor were they random attacks; one of them was not

---

[4] There was an additional incident in which an employee overheard another employee singing "over my dead body." An investigation revealed that the employee suffered from a known mental disability, and he received counseling before being terminated. There was no indication of any actual threat or weapon. To the extent that Shadow argues that there were other threats made against the AlliedBarton guards on a regular basis, she identifies only vague allegations without any instances of physical violence, and it was clear that Kramer was not the source of any of those threats.

perpetrated by a Ground employee; and only one of them escalated beyond verbal threats, and it did not involve a weapon. See *Cavender*, 331 Ga. App. at 475 (1) (a) (prior reports of crime were not substantially similar to shooting where those crimes did not involve multiple murders, a shooting, or any injury). Thus, when considering the location, nature, and extent of these activities, we must conclude that they were not substantially similar to the instant attack, and thus, they did not make Kramer's shooting rampage reasonably foreseeable.[5]

---

[5] We recognize that the existence of prior similar incidents is not the only way to establish foreseeability, and a plaintiff can avoid summary judgment by proffering evidence that the proprietor knew of the danger. See *Piggly Wiggly Southern v. Snowden*, 219 Ga. App. 148, 149 (1) (b) (464 SE2d 220) (1995). But that does not change the outcome here. The fact that Express and Services were aware of the general hostility and animosity between the package handlers and the guards, and that some guards expressed concern about threats to attack the guards in the parking lot, does not equate to knowledge that a mass shooting of numerous employees inside the Ground complex was imminent. See *St. Jude's Recovery Center, Inc. v. Vaughn*, 354 Ga. App. 593, 596 (2) (841 SE2d 108) (2020) (proprietor could not have foreseen rape of resident even though it was aware that other residents had been harassed and felt unsafe walking alone from bus stop to facility); *McAfee v. ETS Payphones, Inc.*, 283 Ga. App. 756, 759 (642 SE2d 422) (2007) (owner was not liable for injuries resulting from criminal acts because "the prior criminal acts here do not suggest that personal injury would occur in the manner that it did in this case.") (citation and punctuation omitted). Nor does our conclusion create a "one free bite rule for premises liability." (Citation and punctuation omitted.) *Shoney's, Inc. v. Hudson*, 218 Ga. App. 171, 173 (2) (460 SE2d 809) (1995), overruled on other grounds by, *Brown v. State*, 274 Ga. 31 (549 SE2d 107) (2001). Even viewing the evidence in the light most favorable to Shadow, to treat the threats between employees and guards as foreshadowing a mass shooting event would essentially make Express and Services

13

b. *The trial court properly considered the relevant case law*.

Nevertheless, Shadow argues that the trial court erred in relying on *Cavender* because that case involved a targeted attack. We disagree and find the reasoning of that case instructive. In *Cavender*, we explained that prior reports of violence that involved only verbal threats were not substantially similar to a shooting or an instance of multiple murders. Id. at 475 (1) (a). Indeed, in *Cavender*, and in *Brown*, another mass shooting case, we reiterated that foreseeable consequences are ones that "because they happen so frequently, may be expected to happen again." (Citation and emphasis omitted.) *Brown*, 265 Ga. App. at 893 (1); *Cavender*, 331 Ga. App. at 475 (1) (a). The mere fact that Express and Services were aware that mass shootings *can* occur does not render the mass shooting at the Kennesaw facility foreseeable.[6] See

liable for every criminal act of its employees on the property and would render them insurers of their employees' safety. See *Boone v. Udoto*, 323 Ga. App. 482, 484 (1) (747 SE2d 76) (2013) ("one is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable.") (citations and punctuation omitted). Our analysis here recognizes that is not what the law requires. *Rautenberg*, 351 Ga. App. at 505 (1).

[6] To the extent that Shadow contends Express and Services knew of the risk of mass shootings because they have become more common, the same knowledge could be attributed to her. See *B-T Two, Inc.*, 307 Ga. App. at 656 (3) (physical precedent only) ("common knowledge" that intoxicated people can become violent would be

14

*Johnson v. Avis Rent A Car System, LLC*, Nos. S20G0695, S20G0696, __ Ga. __ (__ SE2d __), 2021WL1724956, at *6-7 (May 3, 2021) (car accident, which was merely possible rather than probable result of theft of car from rental company, was not foreseeable); *Goldstein, Garber & Salama*, 300 Ga. at 842-843 (1); *The Retail Property Trust v. McPhaul*, __ Ga. App. __ (1) (a) (857 SE2d 521, 525-526 (1) (a)) (2021) (prior physical altercations over parking spot, verbal threats, and intentional violence in mall parking lot was not sufficiently similar to "road rage" incident to make criminal act foreseeable).

c. *The trial court gave proper weight to the expert's opinion.*

Shadow also argued that the expert's opinion raises a factual question as to the foreseeability of the attack. Here, the expert opined that the shooting was foreseeable (1) because of the prior instances in Bedford Park and at the Kennesaw facility; (2) due to the lack of sufficient safety measures; and (3) because a packing facility was part of a critical infrastructure and was thus a likely target for a mass shooting. The expert labeled the Bedford Park incident as a "major warning sign." But, the expert's opinion does not require us to draw a different conclusion. As discussed above, the

---

attributed to plaintiff as well, and thus defendant did not have superior knowledge of risk).

Bedford Park incident and the other prior reports were not similar enough to raise a jury question about the reasonable foreseeability of a random mass shooting. As to the other threats at the Kennesaw facility, the expert conceded that each of the offending employees had been terminated, and none of the incidents involved a threat coming to fruition; the actual use of a weapon; or a breach of security. Additionally, the expert's opinion about inadequate security measures having an effect on the ability to carry out the attack are purely speculative. Finally, the expert opined that any facility like this would be a target for workplace violence, but such generalized risk is insufficient to establish foreseeability. See *Agnes Scott College, Inc. v. Clark*, 273 Ga. App. 619, 622-623 (1) (616 SE2d 468) (2005) (general crime statistics and students' concerns about area are insufficient to raise question of fact on foreseeability of risk); *Cavender*, 331 Ga. App. at 476 (1) (a) (rejecting expert testimony about generalized risk as a grounds for establishing question of fact on foreseeability); *Brown*, 265 Ga. App. at 895-896 (1) (same). Compare *Brookview Holdings v. Suarez*, 285 Ga. App. 90, 96-97 (2) (645 SE2d 559) (2007) (expert testimony established foreseeability where expert based opinion on a "study of the area surrounding the [location of the crime], the record of crime in that area, and their experience with crimes of [that] nature").

16

Were we to adopt Shadow's standard of foreseeability, we would essentially be holding, as a matter of law, that a mass shooting event is foreseeable to every organization and premises owner, and would essentially make owners liable to insure an invitee's safety. This is not what our law requires, and we decline to extend the law in this manner. *Rautenberg*, 351 Ga. App. at 505 (1). Accordingly, the trial court correctly found that Shadow had not raised a question of fact that Kramer's random attack was reasonably foreseeable, and thus Express and Services were entitled to summary judgment.

*Judgment affirmed. Gobeil, J., concurs. Barnes, P. J., dissents.*

# In the Court of Appeals of Georgia

A21A0072. SHADOW v. FEDERAL EXPRESS CORPORATION

et al.

BARNES, Presiding Judge, dissenting.

While I agree with the majority's reasoning regarding foreseeability as it relates to a prior similar criminal act, I do not believe that the existence or nonexistence of a prior similar criminal act is determinative to the outcome of this case. For this reason, I must respectfully dissent.

I agree that when assessing "whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal

activities and their likeness, proximity or other relationship to the crime in question."
*Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997). However, basing the foreseeability of the current criminal act entirely on whether there was a previous criminal act and the similarity of the criminal act results in an overly generic analysis of the issue, rather than one more narrowly tailored to the facts present in this case – facts that demonstrate, not only an aggressive, antagonistic relationship among security and the package handlers, but also numerous other reported incidents of threatened or actual workplace violence at the Kennesaw facility. I depart from the majority for this reason.

Given this other evidence, a fortuitous absence of a prior similar crime does not justify relieving FedEx from responsibility for foreseeable consequences. Indeed, we have cautioned against a formulaic approach to foreseeability and equated a blanket requirement of proof of a prior similar crime to establishing "the equivalent of a 'one free bite rule.'"*Wallace v. Boys Club of Albany*, 211 Ga. App. 534, 536 (2), n. 2 (439 SE2d 746) (1993).

The majority dismisses the prior reported instances of workplace violence and threats of violence at the Kennesaw facility and the 2011 shooting at the Bedford Park facility as too dissimilar to Kramer's attack. However, the occurrence of a prior

similar crime is not the only way to demonstrate foreseeability. *Shoney's Inc. v. Hudson*, 218 Ga. App. 171, 173 (2) (460 SE2d 809) (1995), overruled in part on other grounds by, *Brown v. State*, 274 Ga. 31, 34 (1) (549 SE2d 107) (2001) ("not[ing] that a showing of prior similar incidents on a proprietor's premises is not always required to establish that a danger was reasonably foreseeable," and finding an issue of material fact regarding the foreseeability of a criminal attack where evidence showed that the defendant knew that customers were in danger of criminal attack based on common knowledge that the restaurant in question was located in the "highest" crime area and management had discussions that acknowledged the potential for attacks on customers in the restaurant's parking lot); *Piggly Wiggly Southern v. Snowden*, 219 Ga. App. 148, 149 (1) (b) (464 SE2d 220) (1995) (noting that proof of a prior similar crime is not the only way to establish foreseeability where "[t]wo of defendant's assistant managers testified that they considered the parking lot unsafe, that they had repeatedly suggested the hiring of a security guard, that male employees always walked female employees to their cars at night, and that they would not allow their wives to go to the store alone," and concluding that "[e]ven in the absence of prior similar crimes, this testimony would have been sufficient to create a question of fact as to whether defendant knew or should have known about the unreasonable risk of

criminal attack in its parking lot"). Our Supreme Court has further noted that "knowledge of a volatile situation brewing on the premises can establish foreseeability as well." *Martin v. Six Flags Over Georgia II*, 301 Ga. 323, 331 (II) (A) (801 SE2d 24) (2017). I do not believe that our law requires that human beings must be shot or die to establish that workplace violence is predictable. If it is predictable, it is foreseeable, and if no action is taken therefrom it is negligent.

To call this attack "random" begs the question. Here, Kramer was not a "random" gunman; he was employed as a package handler at the Kennesaw facility. Other evidence, including the deposition testimony of site supervisor, Indira Murray, also suggests that this was not a random mass shooting. Murray's testimony instead reflects that FedEx was aware of significant animosity and escalating threatening behavior among not only the package handlers and the onsite security guards, but also involving other workers at the Kennesaw facility. Murray characterized the relationship between the package handlers and security as "80 percent, maybe 85 percent hostile." While she recalled generalized threats to "stab" or "punch" the security guards, Murray testified that "a major [threat] that was made to me was they [certain package handlers] had some guns in the car and they're going to wait for me." Murray testified that the threats were to the "point where [her] husband had to

4

come to escort [her] home." She "constantly" reported the threats to managers and requested that the package handlers' aggressive behavior be addressed, but according to Murray, there was no response.

Likewise, the record includes multiple workplace violence incident reports involving the Kennesaw facility that detail threats from unidentified workers toward other workers, including to "slit her fucking throat and kill myself"; "I'm here to see who I'm going to shoot first;" "watch your back;" and "beat her up, kill her and stab her with a butcher knife." One of the reported incidents included input from a work coach who noted that a worker accused of threatening workplace violence had a mental illness, and thus did "not handle stress in the same way that others do. The incident report noted that the worker had suggested that his "sort manager" be suspended so that she "could learn about mentally ill people and what makes them tick and how not to push them too far and should not make them snap."

For summary adjudication, the burden of proof was not on Shadow, "even with respect to issues on which [she] would have the burden of proof at trial; the trial court must construe the evidence in favor of the opposing party[.]" (Citation omitted.) *Barlow v. Orkin Exterminating Co.*, 196 Ga. App. 822, 823 (397 SE2d 170) (1990). See *Johnson v. Omondi*, 294 Ga. 74, 84-85 (2) (751 SE2d 288) (2013) (Blackwell,

5

J. concurring) (noting that "[w]hen a court considers a motion for summary judgment under OCGA § 9-11-56 (c), it must view the pleadings and evidence in the light most favorable to the nonmoving party, it must accept the credibility of the evidence upon which the nonmoving party relies, it must afford that evidence as much weight as it reasonably can bear, and to the extent that the moving party points to conflicting evidence, it must discredit that evidence for purposes of the motion").

To that end, even a perceived "weakness of appellant's case does not entitle the [court] to play factfinder and enter summary adjudication for appellees in a case where the evidence does not, with plain and palpable facts, establish the absence of evidence to support the nonmoving party's case." *Doe v. Prudential-Bache/A.G. Spanos Realty Partners*, 268 Ga. 604, 607 (492 SE2d 865) (1997), (Hunstein, J., dissenting) (rejecting majority's affirmance of summary judgment and finding jury question as to forseeability based on "whether appellees' knowledge of . . . widespread and flagrant criminal activity in the parking lots was 'sufficient to attract [appellees'] attention to the dangerous condition which resulted in [the assault on appellant].'")

A jury may yet determine that FedEx could not have foreseen Kramer's attack. But on these facts, it is not for the court to make that determination. The majority

evokes the dreaded "slippery slope" contention, specifically warning that passing the issue of foreseeability to a jury would equate to holding that, as a matter of law, every mass shooting event is foreseeable to every organization and premises owner. This is patently untrue. Shadow, as the respondent, was not required to point to evidence demanding a conclusion that the criminal act was foreseeable, she was required only to provide evidence giving rise to a triable issue. Given the aforementioned evidence and construing all inferences therefrom in favor of Shadow, "[e]ven in the absence of a prior similar crime," the evidence was "sufficient to create a question of fact as to whether [FedEx] knew or should have known about the unreasonable risk of [Kramer's] criminal attack." *Snowden*, 219 Ga. App. at 149 (1) (b). See also *Shoney's*, 218 Ga. App. at 173-174. Thus, it was error for the trial court to find otherwise as a matter of law, and a jury should assess whether Kramer's attack was foreseeable.