A08A1801. THORNTON v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.
(676 SE2d 814)

BARNES, Judge.

On February 28, 2006, a fire destroyed LaGrande Thornton's home in Carroll County. On March 15, 2007, Thornton sued Georgia Farm Bureau Mutual Insurance Company ("GFB") on his homeowner's policy, claiming that GFB's alleged express and implied promises to pay and delay in denying his claim unfairly prejudiced his ability to bring the action within one year after the date of loss. The trial court granted summary judgment to GFB based on a contractual provision in the policy requiring that Thornton file suit within one year of the loss. Thornton claims that a question of fact exists as to whether the insurance company waived the limitation period or whether the limitation period was tolled. We disagree and affirm the grant of summary judgment to GFB.

We review the grant of a motion for summary judgment de novo, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154 (658 SE2d 909) (2008).

A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so,

the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.

Id.

So viewed, the evidence shows that on February 28, 2006, which was the date of the fire, Thornton met with GFB's agent, Joshua Martinez. Without communicating his concerns to Thornton, Martinez wrote in his "adjuster comments" that "this could be a suspicious loss based on a previous claim." On the same day, GFB advanced $1,500 to Thornton for living expenses, and Thornton signed an agreement acknowledging that the advance was not an admission of liability and did not modify any requirements contained in the policy.

On March 2, 2006, GFB sent Thornton a letter explicitly notifying him that the policy required any action against it to be brought within one year of the date of loss. When Thornton received an advance of $5,000 on March 7, 2006, he again signed an agreement acknowledging that the advance was not an admission of liability and did not modify any requirements contained in the policy.

On April 9, 2006, an investigator hired by GFB issued a report concluding that the fire was incendiary in origin. Martinez sent a letter to Thornton on April 12, 2006, which did not mention the investigation, but rather notified Thornton that he would need to resubmit his proof of loss because the one he filed previously had been rejected "due to errors in filling it out." In an affidavit filed on October 24, 2007, Thornton asserted that Martinez told him that he did not need to hurry to complete the forms because if the claim was denied, he would have one year from that date to file suit. Thornton also claimed in the affidavit that Martinez told him GFB would "take care of [him]" and that he did not need to hire an attorney. Thornton acknowledged that he did not have any communication with Martinez after April 2006.

On April 21, 2006, GFB informed Thornton that the cause of the fire had been determined to be incendiary and that it would be investigating "this suspicious fire loss." That letter also notified Thornton that his initial proof of loss had been rejected because, among other things, it contained "no documentation establishing how the [claimed] amounts were calculated" and that GFB continued to demand "strict compliance with the policy conditions."

Based on this letter, Thornton secured counsel regarding his claim under the policy. On May 23, 2006, Thornton's counsel demanded payment in full for the losses sustained by Thornton in the fire. GFB denied Thornton's demand on June 7, 2006, contending that it was still investigating the claim and that it needed Thornton and his wife to submit to examination under oath. In

addition, GFB continued to "demand strict compliance" with the requirements of the policy.

Thornton was examined under oath on June 19, 2006 and July 12, 2006. On September 28, 2006, GFB forwarded an additional advance of $6,000 to Thornton. Again, GFB notified Thornton that the advance was not an admission of liability and did not modify any requirements contained in the policy.

On October 30, 2006, GFB notified Thornton that it was denying coverage under the policy based on its determination that Thornton intentionally burned his home, or caused it to be burned, and that he "misrepresented and concealed material facts and circumstances regarding this loss, [his] financial condition, and [his] claims for insurance proceeds." Thornton did not file suit against GFB until March 15, 2007, which was just over one year after the date of the fire.

Despite Thornton's claim that GFB's actions resulted in either a waiver or tolling of the limitations period provided in the policy, no credible evidence supports such assertions. First, OCGA § 33-24-40 expressly provides that an insurer does not waive any provision of the policy merely by investigating a claim or engaging in negotiations toward a possible settlement of the claim. In addition, the Supreme Court of Georgia has held that without express authority from the insurance company, neither its local agent nor claims adjuster has the power to waive a policy provision that any action against the insurer must be brought within one year of the date of loss. *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 566 (1) (569 SE2d 833) (2002). "Unless the agent perpetrates some fraud that induces the insured to delay bringing the lawsuit until after the time for bringing suit has expired, the insured cannot rely on the agent's conduct as an excuse for the failure to sue." Id. Here, there is no evidence that GFB authorized its agent to waive any provision of the policy. Nor is there any evidence that Thornton was induced to delay filing a lawsuit until after the expiration of the one-year period.

Despite the alleged statement by Martinez suggesting that Thornton need not hire an attorney, Thornton secured counsel in April or May 2006, and both Thornton and his counsel were repeatedly put on notice by GFB that it did not waive any provision of the policy. Unlike the cases cited by Thornton, here GFB unequivocally denied the claim in October 2006, well before the expiration of the period of limitation, and there is no evidence of any investigation, negotiation, offer, assurance, or similar action by GFB after the claim was denied. See *Barrett v. Commercial Union Ins. Co.*, 188 Ga. App. 353, 355 (373 SE2d 59) (1988); compare *Auto-Owners*, supra at 567 (2) (waiver of limitation period was disputed question of fact when insurer never denied liability and continued to negotiate

with insured after limitation period expired). Moreover, Thornton's assertion that GFB's actions, such as its payment of advances for living expenses, caused him to believe that GFB would pay his claim in full is directly contradicted by the demand letter sent by his counsel to GFB in May 2006. *Ga. Farm &c. Ins. Co. v. Nolan*, 180 Ga. App. 28, 29 (348 SE2d 554) (1986).

Similarly, we find no support in the record for Thornton's contention that GFB should not have waited until October to deny his claim because it concluded in April that he had been responsible for the fire. As communicated to Thornton in the April 21, 2006 letter, the April 9 investigation concluded only that the fire was incendiary. While Martinez noted on the date of the fire that the loss "could be . . . suspicious" based on a prior claim, there is no evidence that GFB determined that Thornton was responsible for the fire at any time prior to its denial of coverage in October 2006.

Finally, relying upon *Nicholson v. Nationwide &c. Ins. Co.*, 517 FSupp. 1046 (N.D. Ga. 1981), Thornton claims that the period of limitation should be tolled because the policy provides that GFB was not obligated to pay a claim or deny coverage for 60 days after Thornton submitted a proof of loss. This Court has already rejected such arguments, holding that "*Nicholson* does not reflect Georgia law." *Suntrust Mtg. v. Ga. Farm &c. Ins. Co.*, 203 Ga. App. 40, 42 (416 SE2d 322) (1992).

Although binding precedent requires that we reach the result that we have, the time has come for the General Assembly to examine whether the limitation period for suits against an insurance company should be tolled while a claim is being processed. As recognized in *Nicholson*, supra, 517 FSupp. at 1050-1051,

> [s]ubstantial delays are built into standard insurance policies. The insured is generally allowed 60 to 90 days to file proof of loss. The insurer is generally given another 60 days to pay or settle the claim. Notwithstanding diligence by both parties at all stages of the claim procedure, considerable time often elapses before the insured learns whether the insurer will pay. Even if the insured promptly reports a loss to his insurance agent, discussions concerning resolution of the claim may take weeks. Additional time often passes before the insurance company provides a form for filing proof of loss. Even then the insured does not know whether it will be necessary to start an action; under the policy in this case, payment is not required until sixty days after "acceptance" by the insurer of the proof of loss. No time limit for acceptance is imposed. While inclusion of such terms in a policy clarifies the claims procedure, the practical

consequence is considerable shortening of the time within which suit may be commenced. [T]he appropriate resolution is to allow the contractual period of limitation to run from the date of the casualty or, as provided in this policy, discovery of the loss, but to toll the running of the limitation from the time the insured gives notice until the insurer formally denies liability.

In that case, Judge Freeman adopted the position taken in *Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514 (267 A2d 498) (1970), predicting that the courts of this State would do the same when given the opportunity. Instead, we have not done so. See *Auto-Owners Ins. Co. v. Ogden*, supra; *Cambridge Mut. Fire Ins. Co. v. Okonkwo*, 218 Ga. App. 59, 62 (3) (460 SE2d 302) (1995); *SunTrust Mtg. v. Ga. Farm &c. Ins. Co.*, supra, 203 Ga. App. at 42; *Universal Scientific v. SAFECO Ins. Co. of America*, 174 Ga. App. 768, 772 (331 SE2d 611) (1985) (physical precedent); *Holland v. Independent Fire Ins. Co.*, 168 Ga. App. 761 (310 SE2d 297) (1983).

Therefore, the General Assembly should consider whether tolling should be adopted in this State.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 27, 2009

*John R. Bevis*, for appellant.

*James, Bates, Pope & Spivey, Duke R. Groover, Jeanna G. Fennell, Swift, Currie, McGhee & Hiers, Mark T. Dietrichs, Adorno & Yoss, William W. Downs*, for appellee.