**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 5, 2013**

# In the Court of Appeals of Georgia

A13A1139. WHITFIELD v. TEQUILA MEXICAN RESTAURANT NO. 1.

McMILLIAN, Judge.

Don Anthony Whitfield was stabbed outside the Tequila Mexican Restaurant No. 1, Inc. ("Tequila") and brought this lawsuit against his assailant Paul Leonard Aydelotte and the restaurant. The basis for Whitfield's premises liability and gross negligence claims against Tequila was that Tequila had continued to serve Aydelotte alcohol, despite knowing that Aydelotte was drunk, belligerent, and harassing other customers. Whitfield also claimed that Tequila had negligently hired and supervised its employees and that Tequila had failed to provide adequate security. After discovery, the trial court denied Whitfield's motion for sanctions for spoliation and granted summary judgment for Tequila on all claims. Finding no error, we affirm.

Viewing the evidence in the light most favorable to the nonmovant on summary judgment,[1] on September 12, 2010, Whitfield was having a celebratory dinner with his girlfriend and her family at the Tequila Mexican Restaurant in Dallas, Georgia. Upon their arrival, the group was seated near another patron, Aydelotte, who by that time had consumed an unknown quantity of alcoholic beverages. Aydelotte began harassing a female member of the group, asking if she was fertile and also called another member of the group a "freak." As a result, Whitfield and other members of his group asked to have their table moved away from Aydelotte, which they were able to do, and complained to the acting manager Luis Martinez. Other patrons also observed Aydelotte cursing and slurring his words and complained to restaurant employees. Even after these complaints, Tequila continued to serve alcohol to Aydelotte.

After the group moved to another table, Aydelotte continued to harass the group, cursing after a two-year-old child began to cry and telling the group to keep her quiet or he would do it. As a result of this behavior and customer complaints, the acting manager spoke to Aydelotte and asked him to leave. Aydelotte got up to leave,

---

[1] See *Thornton v. Georgia Farm &c. Co.*, 297 Ga. App. 132 (676 SE2d 814) (2009).

but refused to pay his bill and acted somewhat aggressively. This made the acting manager "a little afraid" of Aydelotte but he did not believe that Aydelotte was a threat or dangerous to anyone in the restaurant. Neither the acting manager nor the general manager could recall any other situation in which a drunk and belligerent patron had been asked to leave the restaurant or any crime at the restaurant other than some customers walking out without paying their bills. They also had not had any previous experience with Aydelotte. Neither Whitfield nor members of his group were aware of any other crimes or violence occurring at the restaurant.

Before Aydelotte was asked to leave, two women from the group, along with the toddler, went outside so they could get better cell phone reception and called 911 to report Aydelotte. As Aydelotte was leaving, he saw the women outside and started calling them names for reporting him to the police. Observing the commotion, Whitfield left the restaurant to protect the women. Once outside, Whitfield and Aydelotte walked toward each other with Whitfield telling Aydelotte that he did not "know who the f–k [he was] messing with." Whitfield then threw the first punch and after two punches, Aydelotte stabbed him.

In discovery, Whitfield learned that Aydelotte's electronic ticket had been erased from the computer system on the night of the incident and sought sanctions for

3

spoliation, claiming that the ticket would have shown how long Aydelotte had been at the restaurant and how much alcohol Aydelotte had been served, thereby supporting that Tequila had knowledge of Aydelotte's dangerous propensities. Tequila, on the other hand, asserted that it was their general practice to erase tickets from the system for those customers who had walked out and failed to pay their bills, as a means of "voiding" the tickets.

1. At the outset, we take this occasion to remind counsel about the page limitations set out in Court of Appeals Rule 24 (f). Accordingly, we strike pages 16 to 27 of Appellant's reply brief and have not considered the argument contained on those pages in this appeal.

2. Turning first to Whitfield's negligence claims under theories of premises liability and failure to provide adequate security, we review a denial of summary judgment under a de novo standard of review. See *Thornton*, 297 Ga. App. at 132. The touchstone of any negligence claim is that "the defendant did something that it should not have done or failed to do something that it should have done pursuant to the duty owed the plaintiff." (Citation omitted.) *Parker v. Hovers*, 255 Ga. App. 184, 186 (1) (564 SE2d 795) (2002). Here, Tequila is the owner or occupier of the premises upon which Whitfield was injured, and as such, owes invitees like Whitfield

the duty to exercise ordinary care "in keeping the premises and approaches safe." OCGA § 51-3-1. But "a property owner is not an insurer of an invitee's safety, and an intervening criminal act by a third party generally insulates a proprietor from liability unless such criminal act was reasonably foreseeable." *Snellgrove v. Hyatt Corp.*, 277 Ga. App. 119, 123 (3) (625 SE2d 517) (2006). See also *Sturbridge Partners, Ltd v. Walker*, 267 Ga. 785, 785-786 (482 SE2d 339) (1997) ("A landlord's duty to exercise ordinary care to protect tenants against third-party criminal attacks extends *only* to *foreseeable* criminal acts.") (emphasis in original); *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1) (405 SE2d 474) (1991) ("If the proprietor has reason to anticipate a criminal act, he or she then has a 'duty to exercise ordinary care to guard against injury from dangerous characters.'") (citation omitted).

But "[e]ven if an intervening criminal act may have been reasonably foreseeable, [] the true ground of liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." (Citations and punctuation omitted; emphasis omitted.) *Cook v. Micro Craft*, 262 Ga. App. 434, 438 (1) (585 SE2d 628) (2003). See also *Snellgrove*, 277 Ga. App. at 124 (quoting *Cook*); *Rappenecker v. L.S.E., Inc.*, 236 Ga. App. 86, 88 (2) (510 SE2d 871) (1999) ("The basis of liability is a proprietor's superior knowledge of the

5

existence of a condition that may subject an invitee to an unreasonable risk of harm."). As recently explained in *B-T Two, Inc. v. Bennett*, 307 Ga. App. 649 (706 SE2d 87) (2011) (physical precedent only),[2] these two principles of reasonable foreseeability and the proprietor's superior knowledge "guide our consideration of the question [of whether an owner or occupier has breached its duty to keep an invitee safe from the criminal act of a third party] and limit the circumstances in which the law imposes liability for the failure to protect against such criminal act." Id. at 654-655.

Whitfield has failed to come forward with evidence from which a jury could have concluded that a landowner in Tequila should have reasonably foreseen Aydelotte's assault. No evidence exists in the record of similar criminal activities occurring at the restaurant or in the parking lot. See *Sturbridge*, 267 Ga. at 786

---

[2] Under Court of Appeals Rule 33 (a), a special concurrence that does not agree with all that is said renders the opinion to be physical precedent only. Although *B-T Two* is thus not controlling, we find the majority's discussion of an owner or occupier of land's potential liability for criminal acts of third parties to be highly persuasive, particularly in light of the similar fact pattern in this case. See *Muldrow v. State*, __ Ga. App. __, n. 29 (744 SE2d 413) (2013) ("This is not to say, however, that a party on appeal should shy away from citing physical precedent as persuasive authority. Indeed, some of the judges on this Court are of the view that our physical-precedent cases should be afforded greater consideration than decisions from appellate courts in other jurisdictions.")

("Accordingly, the incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity."); *Aldridge v. Tillman*, 237 Ga. App. 600, 604 (2) (516 SE2d 303) (1999) ("A criminal act by a third-party may be foreseeable if the incident causing the injury is substantially similar in type to previous criminal activities occurring on or near the premises at issue . . ."). Nor is there any indication that Tequila or its employees had any previous encounters with Aydelotte such that they should have been put on notice of his violent tendencies. See *Dowdell v. Krystal Co.*, 291 Ga. App. 469, 472 (662 SE2d 150) (2008) (restaurant could not have reasonably foreseen altercation by cashier when cashier did not have a criminal record and cashier had not argued, much less struck, any customers during employment).

Implicitly recognizing the dearth of any similar criminal conduct to put Tequila on notice, Whitfield asserts that Tequila had superior knowledge of the amount of alcohol that Aydelotte had consumed and was informed that Aydelotte was boisterous and harassing other customers, and therefore should have reasonably anticipated that Aydelotte could become violent. But even if we assume that it is common knowledge

7

that an intoxicated person may become violent, that knowledge of the danger is imputed to both Whitfield and Tequila. See *B-T Two*, 307 Ga. App. at 656 (3) (victim and restaurant had equal knowledge that "when alcohol is served, some people may become intoxicated and [] when people become intoxicated, some of them may become violent"); *Aldridge*, 237 Ga. App. at 604-605 (previous threats by assailant while intoxicated did not put host on notice that assailant would attack victim with deadly weapon).

Moreover, we do not find that Tequila's superior knowledge about the *amount* of alcohol Aydelotte consumed salvages Whitfield's claim. The issue is whether Tequila had superior knowledge of the "existence of a condition that may subject the invitee to an unreasonable risk of harm." (Citation and punctuation omitted.) *Vega v. La Movida, Inc.*, 294 Ga. App. 311, 315 (2) (670 SE2d 116) (2008). In this case, that condition is the propensity of Aydelotte to become violent when intoxicated, not his blood alcohol level, and the record reflects that both Whitfield and Tequila knew that Aydelotte was drunk and cursing and harassing customers. Because Whitfield has failed to come forward with evidence to support that Aydelotte's assault was reasonably foreseeable or that Tequila had superior knowledge of Aydelotte's propensity to commit violence, we affirm the grant of summary judgment on the

8

claims for premises liability and failure to provide adequate security. See *B-T Two*, 307 Ga. App. at 656 (summary judgment for restaurant on failing to provide security claim); *Luong v. Tran*, 280 Ga. App. 15, 18 (633 SE2d 797) (2006) (criminal activity in area was not sufficiently similar to render shooting reasonably foreseeable).

3. Whitfield also asserts that the trial court erred in granting summary judgment on the claim that Tequila negligently hired and supervised its employees, and that if the employees had called the police, as they were trained to do, the assault could have been avoided. "The appropriate standard of care in a negligent hiring/retention action is whether the employer knew *or should have known* the employee was not suited for the particular employment." (Citations and punctuation omitted; emphasis in original.) *Underberg v. Southern Alarm, Inc.*, 284 Ga. App. 108, 110 (1) (643 SE2d 374) (2007). See also *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 459 (590 SE2d 807) (2003) ("An employer breaches its duty of care by hiring an employee 'who is not accustomed to act with due care.'") (citation omitted.). "With regard to tortious conduct, a claim of negligent hiring and retention is very similar to a claim of premises liability" in that the employer has the duty to exercise reasonable care to protect its invitees from dangerous employees on its premises. *TGM Ashley Lakes*, 264 Ga. App. at 460-461.

9

But Whitfield does not allege that the Tequila employees committed any act that directly caused him injury. And as explained in Division 2, nothing in the record supports that Tequila or its employees should have reasonably foreseen that Aydelotte would draw a knife in the parking lot and stab Whitfield. Accordingly, summary judgment was properly granted to Tequila on this claim. See *Underberg*, 284 Ga. App. at 113 ("The causation element requires showing that, given the employee's dangerous propensities, the victim's injuries should have been foreseen as the natural and probable consequence of hiring the employee.") (Citation and punctuation omitted.); *TGM Ashley Lakes*, 264 Ga. App. at 459 (1) (a) (same).

4. We turn now to Whitfield's claim that Tequila was grossly negligent in continuing to serve alcohol to Aydelotte[3] after it was clear that he was drunk and in failing to call the police. "Gross negligence is defined as the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or lack of the diligence that even

---

[3] Under Georgia's Dram Shop Act, OCGA § 51-1-40, a person who sells, furnishes, or serves alcoholic beverages is not liable for injury or damage caused by or resulting from the intoxication of such person except in limited circumstances not present here. See *Solley v. Mullins Trucking Co., Inc.*, 301 Ga. App. 565, 567 (687 SE2d 924) (2009); *B-T Two*, 307 Ga. App. at 653 (2). We have found no cases, and the parties have not addressed, whether OCGA § 51-1-40 applies to claims for gross negligence, and therefore we decline to decide this claim on these statutory grounds.

careless men are accustomed to exercise." (Citations and punctuation omitted.) *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 707 (2) (618 SE2d 621) (2005). See also OCGA § 51-1-4 (defining "slight diligence" and "gross negligence"). "In other words, gross negligence has been defined as equivalent to the failure to exercise even a slight degree of care." (Citation and punctuation omitted.) *Heard v. City of Villa Rica*, 306 Ga. App. 291, 294 (701 SE2d 915) (2010). "Questions of negligence and diligence, even of gross negligence and slight diligence, usually are matters to be determined by the jury, but in plain and indisputable cases the court may solve the question as a matter of law." (Citation and punctuation omitted.) Id. at 295. See also *Morgan v. Horton*, 308 Ga. App. 192, 198 (707 SE2d 144) (2011).

Based on our review of the record, we do not believe the facts were sufficient to establish that Tequila failed to act with that "slight degree of care" that is required to support a claim for gross negligence. It is undisputed that Tequila allowed Whitfield and his party to move tables, away from Aydelotte, and upon complaints by Whitfield's party and other customers, Tequila asked Aydelotte to leave the restaurant. Aydelotte complied with the request, and it was only after he left the

11

restaurant that the altercation began. Accordingly, the trial court correctly granted summary judgment on this claim.

5. Because we have found that the trial court properly granted summary judgment to Tequila on the negligence and gross negligence claims, Whitfield's claim for punitive damages under OCGA § 51-12-5.1 also must fail. See *Morris v. Pugmire Lincoln Mercury, Inc.*, 283 Ga. App. 238, 241 (2) (641 SE2d 222) (2007); *Nelson v. Glynn-Brunswick Hosp. Auth.*, 257 Ga. App. 571, 580 (5) (571 SE2d 557) (2002).

6. Finally, Whitfield asserts that the trial court erred in denying his motion for sanctions based on the deletion of Aydelotte's electronic ticket on the night of the stabbing. In that order, the trial court found that "at the time of the destruction of the alleged evidence, Defendant and its agents had no notice or knowledge of contemplated or pending litigation and, therefore, there has been no spoliation of evidence." Finding no error, we affirm.

"The trial court has wide discretion in resolving spoliation issues, and we will not disturb its ruling absent abuse." (Citation and punctuation omitted.) *Clayton County v. Austin-Powell*, 321 Ga. App. 12, 17 (2) (740 SE2d 831) (2013). See also *Powers v. Southern Family Markets of Eastman*, 320 Ga. App. 478, 479 (1) (740 SE2d 214) (2013). A spoliation claim cannot be pursued unless the spoliating party

12

was under a duty to preserve evidence. And our appellate courts have time and time again emphasized that "[t]o meet the standard for proving spoliation, the injured party must show that the alleged tortfeasor was put on notice that the party was contemplating litigation. The simple fact that someone is injured in an accident, without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation." (Citation omitted.) *Clayton County*, 321 Ga. App. at 17. See also *Silman v. Associates Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009); *Powers*, 320 Ga. App. at 480; *Watts & Colwell Builders, Inc. v. Martin*, 313 Ga. App. 1, 5 (1) (720 SE2d 329) (2011); *Craig v. Bailey Bros. Realty*, 304 Ga. App. 794, 796-797 (1) (697 SE2d 888) (2010). In other words, "notice of potential *liability* is not the same as notice of potential *litigation*." (Citation omitted; emphasis in original.) *Clayton County*, 321 Ga. App. at 17.

Whitfield argues that the police investigation and arrest of Aydelotte provided notice to Tequila of contemplated litigation. But at most, the arrest put Tequila on notice that there may be a criminal case against Aydelotte,[4] not that Whitfield was contemplating civil litigation against Aydelotte or anyone else. See *McLeod v. Wal-*

---

[4] The record is also undisputed that the investigating officers did not request that the electronic ticket be preserved.

13

*Mart Stores*, No. 12-13919, 2012 WL 2930769 (S.D. Ga. July 18, 2012) ("Plaintiff provides no authority which dictates that being the victim of criminal theft put the Defendants on notice that they might someday be a defendant in a civil suit."); *Stanfill v. Talton*, 851 FSupp.2d 1346 (M.D. Ga. 2012) (GBI investigation into death did not trigger duty to preserve video for civil defendants).

And we find Whitfield's reliance on *Baxley v. Hakiel Indus.*, 282 Ga. 312 (647 SE2d 29) (2007), to be misplaced. *Baxley* involved the destruction of video evidence after an internal investigation was conducted by the defendant, which is not the case here. See *Craig*, 304 Ga. App. 797, n. 2 (explaining limitations of *Baxley*); *Paggett v. Kroger Co.*, 311 Ga. App. 690, 693 (2) (716 SE2d 792) (2011) (distinguishing *Baxley* because defendant "took more action to investigate potential litigation than incompletely filling out a standardized slip and fall incident form"). And our Supreme Court has subsequently confirmed that the duty to preserve evidence is not triggered merely by notice that someone is injured on one's property. *Silman*, 286 Ga. at 28.

Accordingly, we find no abuse of discretion in the trial court's denial of Whitfield's motion for sanctions.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*

14