**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 18, 2014**

# In the Court of Appeals of Georgia

A13A1906. RATLIFF v. McDONALD et al.

McMILLIAN, Judge.

Sarah Kyle Ratliff appeals the trial court's order granting summary judgment to Cobb County Sheriff Neil Warren and six of his deputies[1] in Ratliff's suit for personal injuries arising out of an incident at the Cobb County Adult Detention Center (the "ADC"). We affirm for the reasons set forth below.

---

[1] Ratliff named six John Doe deputies as defendants in her complaint, but later appeared to identify at least some of these "John Does" in her deposition. Those individuals apparently were not named as defendants in the lawsuit, but counsel has made an appearance, moved for summary judgment and submitted a responsive brief on appeal on the deputies' behalf. Moreover, Ratliff designated only portions of the trial court record for inclusion on appeal, so we do not have a complete picture of the proceedings below. Accordingly, we will treat the deputies as parties for purposes of this appeal, and for ease of reference, we will refer to them collectively as the "Deputies."

[O]n appeal from a grant of a motion for summary judgment, we review the evidence de novo in the light most favorable to the nonmovant to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law.

(Citation omitted.) *Burnside v. GEICO Gen. Ins. Co.,* 309 Ga. App. 897, 898 (714 SE2d 606) (2011).

Viewed in the light most favorable to Ratliff, the evidence shows that on April 2, 2009, Ratiliff went to the ADC with her friend, Tansy Collor, to pick up Collor's boyfriend, Yusef Umrani, who was being released from custody. At the same time, Willie Marie McDonald, Umrani's ex-girlfriend and the mother of his children, also arrived at the ADC to pick up Umrani.

McDonald had begun making phone calls and sending text messages to Collor after Umrani went to jail. In these calls and text messages, McDonald threatened both Ratliff and Collor and admonished that they were "sticking [their noses] in the wrong business" and that they would "get what's coming [to them]." McDonald told Collor that she would send Umrani to jail before she let Collor have him and that she would kill Collor. As a result, Ratliff and Collor were concerned about what McDonald might do that day when they saw her at the ADC.

2

Ratliff and Collor went inside one of the ADC's buildings (the "First Building") to determine where in the ADC complex Umrani would be released, and they asked two deputies for help, explaining that the mother of Umrani's children was outside and that they had previous problems with her. The deputies told the women that they could not help, but directed them to the Visitor's Center, where the deputies said Umrani would be released. Ratliff and Collor passed McDonald on the way out the door, without speaking.

Collor walked up to the Visitor's Center, while Ratliff drove there. Inside, Ratliff and Collor asked Sergeant Alvin Sutherland and Deputy Chester Coachman if Umrani would be released there, but the officers told them that Umrani would be released in the First Building. Ratliff and Collor also told Sutherland and Coachman that they needed help because McDonald was in the parking lot and they did not feel safe. According to Ratliff, the officers said that they were familiar with McDonald and that she was "crazy." The officers told the women that they would follow them back down to the First Building to make sure nothing happened.[2]

---

[2] Sutherland and Coachman denied any prior knowledge of or experience with McDonald. They also denied that Collor and Ratliff told them that McDonald had threatened them, only that there might be a problem. They also said that they instructed Ratliff and Collor to wait at the Visitor's Center while they retrieved Umrani so they could avoid contact with McDonald.

Ratliff and Collor left the Visitor's Center and drove back down to the First Building, while the two deputies drove over in their car. Ratliff parked, and the two women got out of the car, while the deputies were paused at a stop sign. Meanwhile, McDonald had backed her diesel truck out of a parking space and was sitting between Ratliff's and the deputies' cars. Four other deputies were standing nearby. Ratliff said that she screamed at Sutherland and Coachman that they needed to stop McDonald, but the deputies standing in the area told the women that McDonald was not going to do anything and the women could go ahead and cross over the parking lot to the First Building.[3] As Ratliff and Collor began walking toward the building, however, Ratliff heard McDonald yell something about "killing," and a deputy heard her yell, "Bitch, if you go down there, I'll run your ass over." As Ratliff and Collor crossed toward the building, McDonald "gunned it," striking both women. Ratliff stated that all of these events – from Ratliff and Collor leaving the Visitor's Center to the collision – happened within seconds.

---

[3] Coachman said that he never saw or heard Ratliff and Collor wave, point, or yell at them; nor did he hear McDonald threaten the two women.

Approximately two years later, Ratliff filed suit asserting claims for assault and battery against McDonald[4] and claims for negligence and recklessness against Warren and the Deputies. At some point, she apparently refined her claims against the Deputies to base them on theories of premises liability, recklessness and the public duty doctrine and to base her claim against Warren on respondeat superior. Warren and the Deputies subsequently filed a motion for summary judgment, which the trial court granted. The trial court found that the claims against the Sheriff were barred under the doctrine of sovereign immunity. The trial court also found that Ratliff failed to establish elements of her claims for premises liability and recklessness. Accordingly, the trial court found that Ratliff's claims for respondeat superior against the Sheriff also failed. Finally, the trial court concluded that Ratliff's claims under the public duty doctrine were barred under the doctrine of sovereign immunity.

1. Before considering the merits of Ratliff's claims, we first address the issue of whether Warren and the Deputies are protected by immunity. See *Cameron v. Lang*, 274 Ga. 122, 124 (1) & 126 (3) (549 SE2d 341) (2001) (issues of sovereign and official immunity are generally threshold issues to be decided before addressing the merits of a plaintiff's claims), citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (105 SCt

___

[4] McDonald is not a party to this appeal.

5

2806, 86 LE2d 411) (1985) (official immunity is an "entitlement not to stand trial" rather than "a mere defense to liability") (citations omitted); *McCobb v. Clayton County*, 309 Ga. App. 217, 217-218 (1) (a) (710 SE2d 207) (2011) ("Under Georgia law, sovereign immunity is an immunity from suit, rather than a mere defense to liability, and, therefore, whether a governmental defendant has waived its sovereign immunity is a threshold issue.") (citations omitted).

Ratliff brought suit against Warren only in his official capacity as the Sheriff of Cobb County, asserting liability under the doctrine of respondeat superior. And "[s]overeign immunity is the immunity provided to governmental entities and to public employees sued in their official capacities." *Stone v. Taylor,* 233 Ga. App. 886, 887-888 (1) (506 SE2d 161) (1998).

> The doctrine of sovereign immunity, which the Sheriff has raised as a defense, bars any claims against him in his official capacity. Under the Georgia Constitution, as amended in 1991, "sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." [Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).] Sovereign immunity has been extended to counties and thus protects county

6

employees who are sued in their official capacities, unless sovereign immunity has been waived.

(Citations omitted.) *Butler v. Carlisle*, 299 Ga. App. 815, 818 (1) (683 SE2d 882) (2009). And "[any] waiver of sovereign immunity must be established by the party seeking to benefit from that waiver." (Citation and punctuation omitted.) *McCobb*, 309 Ga. App. at 218 (1) (a). Ratliff failed to carry this burden, however, as she does not argue on appeal, nor did she establish below, that the General Assembly has waived sovereign immunity for the claims raised in this case.[5]

Thus, Ratliff's claim against Warren for respondeat superior is barred by sovereign immunity. "A county may be liable for a county employee's negligence in performing an official function [only] to the extent the county has waived sovereign immunity. Because in this case, there is no evidence that the county has waived its sovereign immunity, the grant of summary judgment on the respondeat superior claim was appropriate." (Citation and punctuation omitted.) *Russell v. Barrett*, 296 Ga.

---

[5] Although Ratliff's complaint alleged that governmental immunity had been waived under the Georgia Tort Claims Act (the "GTCA"), OCGA § 50-21-23,"[t]he waiver of sovereign immunity contained in [the GTCA] does not apply to counties. OCGA § 50-21-22 (5)." *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 188 (674 SE2d 894) (2009). And under the GTCA, sheriffs and their employees are treated as county officers or employees. *Nichols v. Prather*, 286 Ga. App. 889, 893 (1) (650 SE2d 380) (2007).

7

App. 114, 120 (2) (673 SE2d 623) (2009). See also *Robinson v. DeKalb County*, 261 Ga. App. 163, 165 (2) (582 SE2d 156) (2003) (same); *Anderson v. Cobb*, 258 Ga. App. 159, 160 (1) (573 SE2d 417) (2002) (same).[6]

Similarly, to the extent that Ratliff asserts claims against the Deputies in their official capacities, those claims, too, are barred by sovereign immunity in the absence of a waiver. *Coffey v. Brooks County*, 231 Ga. App. 886, 889 (2) (a) (500 SE2d 341) (1998), rev'd in part on other grounds sub nom., *Rowe v. Coffey*, 270 Ga. 715, 716 (515 SE2d 375) (1999) (deputy entitled to sovereign immunity for claims asserted against him in his official capacity); *Hicks v. McGee*, 283 Ga. App. 678, 681 (3) (642 SE2d 379 ) (2007) (same for clerks of courts). And as no waiver exists in this case, any such claims would be barred.

Moreover, contrary to Ratliff's argument, the public duty doctrine does not create a separate exception to sovereign immunity; rather, it is an additional restriction on governmental liability:

---

[6] Additionally, we note the Georgia Supreme Court has applied sovereign immunity to bar negligence claims arising from injuries incurred on county premises. See also *Wilmoth v. Henry County*, 251 Ga. 643, 643-644 (1) (309 SE2d 126) (1983) (county's sovereign immunity barred claims in action for slip and fall at courthouse); *Revels v. Tift County*, 235 Ga. 333, 335 (5) (219 SE2d 445) (1975) (same).

8

The public duty doctrine does not act as a judicially created exception to the state's sovereign immunity. Indeed, because sovereign immunity has constitutional status, it cannot be abrogated by the judiciary. Rather, the public duty doctrine simply defines the scope of a governmental entity's duty to provide police protection to individual citizens, and provides that liability generally can exist only where there is a special relationship between the injured party and the alleged governmental tortfeasor. Thus, the [public duty] doctrine serves to restrict the liability of governmental entities in those situations where sovereign immunity has otherwise been waived or is inapplicable (e.g., where a municipality has purchased liability insurance) – it does not act as an exception to sovereign immunity where such immunity has not been waived.

(Citations omitted.) *Dept. of Human Res. v. Coley*, 247 Ga. App. 392, 394 (1), n. 9 (544 SE2d 165) (2000), disapproved of on other grounds by *Georgia Dept. of Transp. v. Heller*, 285 Ga. 262, 266 (1) (674 SE2d 914) (2009). See also *Rowe v. Coffey*, 270 Ga. at 723 (Carley, J., dissenting) ("The incorporation of the public duty doctrine into Georgia's tort jurisprudence has resulted in a limitation on liability which is *in addition to* that provided by constitutional governmental immunity") (emphasis in original). Accordingly, the doctrine creates a potential defense for a governmental defendant, not a separate claim on which a plaintiff may assert liability. Because we have found that sovereign immunity applies, we need not address the applicability of

9

the public duty doctrine to the claims against Warren or any claims against the Deputies in their official capacity.

Accordingly, we affirm the trial court's grant of summary judgment to Warren and to the Deputies in their official capacities.[7]

2. Ratliff further seeks to recover from the Deputies, individually, based on her allegations that they failed to protect her from McDonald's assault.

We note the Deputies may also have had a potential immunity defense to those claims.[8]

> The doctrine of official immunity, also known as qualified immunity, affords limited protection to public officers and employees for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption. A public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's

---

[7] "[A] grant of summary judgment must be affirmed if right for any reason, whether stated or unstated." (Citation and punctuation omitted.) *Pinnacle Properties V, LLC v. Mainline Supply of Atlanta, LLC*, 319 Ga. App. 94, 99-100 (1) (b) (735 SE2d 166) (2012).

[8] Because Appellant designated only portions of the record for inclusion on appeal, it is unclear whether the Deputies ever asserted the bar of official immunity.

10

independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Citations and punctuation omitted.) *Burroughs v. Mitchell County*, 313 Ga. App. 8, 10 (1) (720 SE2d 335) (2011). If the Deputies' actions could be considered discretionary, Ratliff would only be entitled to recover against them if she established that they acted with actual malice or with the intent to injure. *Adams v. Hazelwood*, 271 Ga. 414, 414-415 (2) (520 SE2d 896) (1999) ("Actual malice" in context of official immunity requires "a deliberate intention to do wrong" and "denotes express malice or malice in fact") (citation and punctuation omitted).

However, the Deputies did not assert official immunity in the motion for summary judgment, and thus we cannot decide this appeal on that basis. See *Maxwell v. Mayor & Aldermen of the City of Savannah*, 226 Ga. App. 705, 711 (4) (487 SE2d 478) (1997). Accordingly, we must address the merits of Ratliff's claims because those issues were raised on the Deputies' behalf in the motion for summary judgment and addressed by the trial court in its summary judgment order.

(a) Ratliff asserts that the Deputies are liable under OCGA § 51-3-1 for negligence "in their unofficial role of keeping and maintaining the grounds of the [ADC]." However, we agree with the trial court's conclusion that Ratliff failed to

present evidence in support of each of the elements of her premises liability claim, entitling the Deputies to summary judgment.

"[A] property owner is not an insurer of an invitee's safety, and an intervening criminal act by a third party generally insulates a proprietor from liability unless such criminal act was reasonably foreseeable." (Citations and punctuation omitted.) *Whitfield v. Tequila Mexican Rest. No. 1*, 323 Ga. App. 801, 803 (2) (748 SE2d 281) (2013). "In order to be reasonably foreseeable, the criminal act must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers against the risk posed by that type of activity." (Citation and punctuation omitted.) *Drayton v. Kroger Co.*, 297 Ga. App. 484, 485 (677 SE2d 316) (2009).

> In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. While the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical. What is required is that the prior incident be sufficient to attract the [owner or occupier's] attention to the dangerous condition which resulted in the litigated incident. Further, the question

12

of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.

(Citations and punctuation omitted.) *Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997).

Here, Ratliff presented no evidence of any prior similar incidents at the ADC. Moreover, the evidence reflects that any prior threats by McDonald toward Ratliff appear to be generalized in nature,[9] and the description of these threats provided by Ratliff and Collor to Sutherland and Coachman were similarly vague. Certainly, Ratliff presented no evidence of any specific, immediate threat of harm (e.g., the women passed each other in a doorway that day without incident), nor did she present any evidence of any prior acts of violence by McDonald that were known to either Ratliff or the Deputies. In fact, both Sutherland and Coachman averred that they had no prior knowledge that McDonald had ever harmed anyone. Accordingly, we find that Ratliff failed to establish that it was reasonably foreseeable to the Deputies that McDonald would strike Ratliff with her truck in the ADC's parking lot directly in front of four or more deputies. See *Agnes Scott College, Inc. v. Clark*, 273 Ga. App.

---

[9] Moreover, it appears that McDonald made such threats primarily in her communications with Collor, rather than directly to Ratliff.

619, 621-623 (1) (616 SE2d 468) (2005) (without evidence of prior similar crimes committed in the area, kidnapping of plaintiff in broad daylight in busy college parking lot not reasonably foreseeable).

"But even if an intervening criminal act may have been reasonably foreseeable, the true ground of liability is the *superior* knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." (Citations and punctuation omitted; emphasis supplied.) *Whitfield*, 323 Ga. App. at 803 (2). Therefore, even if Ratliff had informed at least two of the Deputies that she had had prior threats from McDonald, Ratliff herself had direct knowledge of the threats. And both the deputy and Ratliff heard McDonald shouting threats at the same time on the day of the incident. Accordingly, Ratliff had at least an equal, if not a superior, knowledge of the nature and degree of the threat posed by McDonald and consequently had an equal or greater degree of foreseeability. See id. at 803 (2). (proprietor lacked superior knowledge of threat posed by drunk customer where neither knew of perpetrator's propensity for violence and both knew that customer was drunk and cursing and harassing customers); *Johnson v. Atlanta Housing Auth.*, 243 Ga. App. 157, 160 (2) (532 SE2d 701) (2000) (where plaintiff knew of dangers in sitting on a bench at night in front of public housing where prior shootings had

14

occurred on the block, his knowledge of the danger was at least equal to that of housing authority, precluding recovery); *Griffin v. AAA Auto Club South, Inc.*, 221 Ga. App. 1, 2-3 (1) (470 SE2d 474) (1996) (holding as a matter of law that employer could not reasonably foresee employee's boyfriend's actions in shooting her even though employee had informed employer two days earlier that he posed a threat).[10] Thus, Ratliff cannot establish superior knowledge, which is the sine qua non of her premises liability claim, and the trial court properly granted the Deputies' motion for summary judgment on this claim.[11]

(b) Ratliff asserts that the trial court erred in granting summary judgment on her claim for recklessness. Ratliff asserted this claim in support of her prayer for

---

[10] Moreover, "[t]his was not a random stranger attack but rather grew out of a specific private relationship which had no connection with [the ADC] whatsoever. The place chosen by [McDonald] for the attack just happened to be [the ADC's] parking lot. [The Deputies and the ADC] did not create or allow to exist an environment which placed [Ratliff] at risk any more than if she had been at home or on the street." (Emphasis omitted.) *Griffin*, 221 Ga. App. at 3 (1).

[11] The case of *Clarke v. Freeman*, 302 Ga. App. 831, 836 (1) (692 SE2d 80) (2010), upon which Ratliff relies is procedurally and factually inapposite. In that case, the plaintiffs asserted claims for infliction of emotional distress, not premises liability, and this Court found that the allegations in support of the claims were sufficient to withstand a motion to dismiss where the complaint alleged that the defendants were aware of a specific threat against plaintiffs based on the perpetrator's statements, that a weapon had been confiscated from the perpetrator earlier that day, and that the defendant courthouse guards failed to provide adequate security.

15

punitive damages, citing OCGA § 51-12-5.1 (b). A claim for punitive damages is derivative in nature and "will not lie in the absence of a finding of compensatory damages on an underlying claim." *D. G. Jenkins Homes, Inc. v. Wood*, 261 Ga. App. 322, 325 (3) (582 SE2d 478) (2003). Because Ratliff's claim for premises liability fails, her claim for punitive damages also fails.

(c) We also find no need to address the public duty doctrine with regard to the claims against the Deputies in their individual capacities. As discussed in Division 1, above, that doctrine does not create a separate cause of action but rather acts only to limit governmental liability. Because we have found that Ratliff's other causes of action fail on the merits, we find no need to consider this defense as to the claims against the Deputies personally.

Accordingly, we affirm the trial court's order granting summary judgment to the Deputies.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*